Patsy Ruth BYNUM, Independent Executrix of the Estate of Robert Lee Dalby, Appellant,

v.

SIGNAL LIFE INSURANCE COMPANY, Appellee.

No. 18557.

Court of Civil Appeals of Texas, Dallas.

April 10, 1975.

Rehearing Denied May 1, 1975.

Marvin G. Shwiff, Shwiff, Hurst & Addison, Dallas, for appellant.

Earle Cobb, Jr., Cobb, Thurmond & Bain, San Antonio, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Patsy Ruth Bynum, independent executrix of the estate of Robert Lee Dalby, deceased, brought this action against Signal Life Insurance Company (hereinafter called Signal), seeking to recover the proceeds of a life insurance policy which had been issued by Signal to Robert Lee Dalby. The executrix appeals from a take-nothing judgment rendered by the trial court based upon a jury verdict. We reverse and render judgment for appellant.

The material antecedent facts are without dispute. On July 5, 1971, Robert Lee Dalby signed a written application for a life insurance policy in the sum of $10,000 to be issued by Signal. In this application, after being questioned about a number of specific diseases, he was asked if he had "any other disease, injury, operation or deformity" to which he answered "No." In another part of the application, he was asked if he had "any other impairment, sickness, injury in past five years," to which he answered "No." Contemporaneous with the execution of the written application, Dalby was given a complete physical examination by Dr. S. G. Khoury of Longview, Texas, at the request of Signal. As a result of this examination, Dr. Khoury reported to Signal that he found a "slight impairment to the left eye." Under "explanation of any abnormal findings" the doctor stated:

In 1962 he received a blow to his head and probably resulted in the relatively poor vision left eye—he does wear glasses to compensate for the impairment vision—

Dr. Khoury testified at the trial of the case, by deposition, that Dalby had told him during the examination on July 5, 1971, that he had suffered from impaired vision to his left eye, all of which he attributed to an automobile injury which he

had previously sustained in 1962. Signal issued the insurance policy to Dalby on July 15, 1971, and this coverage was in full force and effect at the time of Dalby's death on June 3, 1973. The death certificate revealed that the cause of Dalby's death was a brain tumor.

After Patsy Ruth Bynum was named independent administratrix of the estate of Dalby, she made demand upon Signal for the proceeds of the policy but the company refused to pay and this precipitated the filing of the action. The only affirmative defense made by Signal was that "the policy of life insurance upon which plaintiff bases this suit was obtained by misrepresentations which were material to the risk, which were relied upon, and which were intended to mislead the defendant and did induce issuance of the subject policy." Signal alleged the misrepresentations were that Dalby had a brain tumor since approximately 1962; that he had been treated for symptoms of brain tumor at the time of the completion of the application; that at the time of the completion of the application Dalby had symptoms of brain tumor and that the representations made by Dalby to the contrary were false.

In answer to special issues, the jury found: (1) that the representations made by Dalby in his application for the policy of insurance that he did not know of any impairment now existing in his physical health or condition were false; (2) that such representations were known by Dalby to be false; (3) that such representations were material to the risk; (4) that Dalby did not make the representations inquired about in special issue number one with intent to deceive and mislead the Signal Life Insurance Company in issuing the policy in question; (5) that Signal Life Insurance Company relied on such representations in issuing the policy to Dalby; (6) that the representations made by Dalby in the application that he had not consulted a physician for illness during the past five years was false; (7) that such representation was known by Dalby to be false; (8)

that such representation was not material to the risk; and (9) that such representation inquired about in special issue number six was not made by Dalby with the intent to deceive and mislead the Company in issuing the policy.

Based upon this verdict, the trial court rendered judgment that the executrix recover nothing from Signal.

■ Appellant contends that the trial court should have rendered a judgment in favor of the estate, together with interest and attorney fees, because appellee Signal had failed to secure a favorable jury finding in special issue number four—one of the elements necessary to establish the defense of misrepresentation. We agree with appellant. Our Supreme Court, and numerous Courts of Civil Appeals, have consistently held that to avoid a policy of insurance on the grounds of misrepresentation, the insurance company must both plead and prove (1) the making of the representation; (2) the falsity thereof; (3) the materiality thereof; (4) the reliance thereon by the insurer; and (5) that the false statements must have been made wilfully and with design to deceive or defraud the insurance company or made wilfully and with the intention of inducing the insurer to issue him a policy. Clark v. National Life & Accident Insurance Co., 145 Tex. 575, 200 S.W.2d 820, 823 (1947); Allen v. American National Insurance Co., 380 S. W.2d 604, 608 (Tex.1964); Great Southern Life Insurance Co. v. Doyle, 136 Tex. 377, 151 S.W.2d 197, 201 (1941); American Central Life Insurance Co. v. Alexander, 56 S.W.2d 864, 866 (Tex.Com.App.1933, holding approved); Prudential Insurance Co. v. Levinson, 444 S.W.2d 811, 814 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.); Wolfing v. Prudential Insurance Co., 417 S.W.2d 498, 499 (Tex.Civ.App.— Waco 1967, no writ); Empire Life and Hospital Insurance Co. v. Shannon, 415 S. W.2d 532, 534 (Tex.Civ.App.—Amarillo 1967, no writ); Bankers Health and Life Insurance Co. v. Ryan, 411 S.W.2d 373, 374 (Tex.Civ.App.—Fort Worth 1967, writ

ref'd n. r. e.); 11 Baylor L.Rev. 236, 239–40 (1959).

Empire Life and Hospital Insurance Co. v. Shannon, 415 S.W.2d 532 (Tex.Civ.App.—Amarillo 1967, no writ), is a case very similar to that which we now consider. In that case the insurance company denied liability and pleaded the defense of fraudulent misrepresentation in that the insured, Shannon, had denied, in the written application, that he was suffering from diseases, including cancer. After the policy had been issued, it was discovered that the insured was suffering from cancer. The jury found that "Shannon had failed to include in his application all of his previous ailments and physical condition in answers to certain questions in the application for insurance," but that such failure was not done wilfully and with intent to induce the insurance company to issue the policy. Chief Justice Denton, speaking for the Amarillo Court of Civil Appeals, reiterated the rule that to avoid a policy of insurance, false statements must have been made wilfully and with the intent and design to deceive or defraud or with the intent to induce issuance of the policy. Having failed to find this essential element of the defense of misrepresentation, the court held that judgment should have been rendered for the insured. It is interesting to note that in *Shannon*, as here, the insurance company contended that since the representations were known to have been false, it necessarily follows as a matter of law that such false representations were made with the intent to induce the company to issue the policy. The court in *Shannon* denied the contention pointing out that the record raised an issue of fact which the jury found adversely to the company's contention.

■ In the light of this record, we conclude that the question of intent to deceive the insurance company and to induce it to issue the insurance policy is one of fact and not of law. Being one of fact, the jury considered the evidence and re-solved the issue against Signal. There is ample evidence in this record to support the jury's findings.

■ Appellant is also correct in her contention that there is no evidence that the appellee company relied upon the representation of Dalby in issuing the policy. The evidence is uncontroverted that Signal did not rely entirely upon the answers given by Dalby to the various questions propounded in the written application for the policy, but, instead, chose its own doctor to subject Mr. Dalby to a thorough physical examination which included the taking of a history of prior complaints and disabilities. While it is true that Dalby answered in the negative to the question of whether he knew that he had any existing physical infirmities or disabilities, it is likewise true that he frankly and honestly told Dr. Khoury, the insurance company's examining physician, on the same day that he signed the application, and as a part of the history of his prior condition, that he had suffered from impaired vision in his left eye. Thus, the insurance company's doctor was well aware of each and all of the symptoms related by Dalby at the time it issued its insurance policy. There is no evidence in this record that Dalby knew or realized that the slight impairment of vision in his left eye was a symptom of brain tumor. There is no evidence that Dalby was ever treated by any physician for a brain tumor prior to the issuance of the policy. Dr. Khoury, the insurance company's examining physician, did not recognize the symptoms related by Dalby to be those of a brain tumor. The underwriter for the insurance company testified that the company invariably placed a high priority upon the report of the examining physician as a basis for the issuance of the policy. Thus, Dr. Khoury's report which contained all of the facts known to Dalby concerning his physical condition was in the possession of the insurance company and subject to be evaluated prior to the issuance of the policy.

Appellee contends the deposition of Dr. Wensley, Dalby's family physician, reveals that the deceased complained of headaches and dizziness during the physical examination which he administered on November 11, 1970, and that these complaints constitute physical impairments which the deceased failed to divulge in completing his insurance application. We conclude, however, that a person does not consider such common manifestations of discomfort to be a physical impairment. As Dr. Wensley stated, he heard "many times daily," while administering medical examination, patients complaining of headaches, dizziness and lethargy.

Dr. Wensley did not associate Dalby's occasional headaches or dizziness with a brain tumor or other bodily infirmities. He said if Dalby "had any organic brain problem he apparently didn't know it at that time because he didn't so indicate it to me."

 It is difficult to conceive how Signal could have been misled, deceived or induced to issue the policy by a false statement made by Dalby which the insurance company knew was false. If the person to whom a false representation is made is aware of the truth, it is obvious that he is neither deceived nor defrauded, and, therefore, any loss he may sustain is not traceable to the representation but is self-inflicted. Richardson v. Watson, 105 S.W.2d 473, 475 (Tex.Civ.App.—Texarkana 1937, writ dism'd); 18 Texas L.Rev. 507, 508 (1940). Likewise, a person cannot be induced to act upon a false statement which he knows is false.

For the reasons stated it follows that the trial court erred in rendering judgment for Signal.

During the trial of the case, it was stipulated between the parties that in the event of recovery by the administratrix that the sum of $2,500 would be a reasonable attorney's fee to be awarded. It is, therefore, ordered that the judgment of the trial court be reversed and judgment is here rendered that Patsy Ruth Bynum, independent executrix of the estate of Robert Lee Dalby, the deceased, recover judgment against Signal Life Insurance Company in the sum of $10,000, representing the face amount of the policy of insurance, $1,200, representing statutory penalty and damages, and $2,500 attorney's fees, or the total sum of $13,700, together with interest thereon at the rate of six percent per annum from September 9, 1974 (the date of trial court's judgment), until paid. It is further ordered that all costs incurred in this litigation be assessed against appellee Signal Life Insurance Company.

Reversed and rendered.