FIRST CONTINENTAL LIFE & ACCI-
DENT COMPANY, Appellant,

v.

Gloria Jean BOLTON, Appellee.

No. 1078.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

May 28, 1975.

Rehearing Denied June 18, 1975.

Charles P. Merrill, Sherwood Gaines, Gaines & Merrill, Houston, for appellant.

Vincent J. Musachia, Houston, for appellee.

COULSON, Justice.

This is a suit to collect the benefits of a life insurance policy.

On February 12, 1970, Gerald Glen Bolton applied to Union Standard Life Insurance Company for a policy of insurance on his life in the principal sum of $5,000. The application form for the policy was completed by Mr. Shields, an agent of Union Standard Life Insurance Company, during an interview with Gerald Glen Bolton. Present during the interview was Gloria Jean Bolton, the wife of Gerald Glen Bolton. The application designated Gloria

Jean Bolton as the beneficiary of the life insurance policy. After the application form was completed by Shields it was signed by Gerald Glen Bolton. On February 25, 1970, the life insurance policy was issued by Union Standard Life Insurance Company as insurer, and delivered to Gerald Glen Bolton, the insured. A copy of the completed application, as signed by Gerald Glen Bolton, was attached to the life insurance policy when delivered. The insured, Gerald Glen Bolton, died on May 10, 1971, while the policy was in effect. The beneficiary, Gloria Jean Bolton, timely notified the insurer of the death of the insured and made a claim for the benefits under the policy. The insured denied the claim and refused payment under the policy.

On January 21, 1972, Gloria Jean Bolton, appellee, instituted suit against Union Standard Life Insurance Company seeking to recover the $5,000 face value of the life insurance policy, together with 12% penalty, reasonable attorney's fees of $1,666.67, interest and costs of court.

The defendant, Union Standard Life Insurance Company, answered and asserted that it had been acquired by First Continental Life & Accident Insurance Company which was the proper party defendant and is the appellant in this proceeding. The insurer alleged in its defense: That the insured was suffering from seriously adverse health and physical conditions at the time he made application for the subject policy and at the time the policy was delivered to him; that the insured knowingly misrepresented his health condition in the application; that the adverse health condition of the insured was material to the risk; that such misrepresentation of his health condition was knowingly made by the insured with the intent to mislead and defraud the defendant; that the defendant was mislead by the false and untrue representations in the insured's application; that the defendant would not have issued the subject policy if it had been truly informed of the adverse health condition of the insured; and that the death of the insured occurred less than fifteen months after the issuance of the subject policy. The insurer paid into the Registry of the Court all sums paid to it as premiums on the policy and requested that the court make proper distribution of the sums.

The case was tried before a jury. In response to special issues, the jury found that on February 12, 1970, Gerald Bolton made full disclosure of his past medical history to Mr. Shields (the insurance agent) in preparing his application for insurance; that Gerald G. Bolton in making his application for insurance made untrue statements; that the untrue statements were material; and that Gerald G. Bolton did not know that such statement or statements were untrue at the time such statements were made. The jury failed to answer the special issue inquiring if the insurer issued its insurance policy in reliance upon such untrue statement or statements and the special issue inquiring if Gerald G. Bolton wilfully made an untrue statement or statements. The jury found that $1250 were reasonable attorney's fees for the prosecution of the claim and suit. Based upon the jury's answers the trial court entered judgment in the amount of $6,850 for Gloria Jean Bolton, the named beneficiary and appellee herein.

■ In its first point of error, the appellant contends that the trial court erred in refusing to grant the appellant's motion for judgment non obstante veredicto. The appellant urges that it has established its asserted affirmative defense of misrepresentation as a matter of law. In order to establish the defense of misrepresentation on an insurance contract, the appellant must show that the insured gave false and misleading information to the company on a material fact. The company must rely upon the misrepresentation in issuing the insurance policy. The misrepresentation must be made by the insured wilfully and with the intent to deceive the company and

thereby induce the company to issue the policy. Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820 (Tex. Sup.1947); Prudential Insurance Company of America v. Torres, 449 S.W.2d 335 (Tex. Civ.App.—San Antonio 1970, writ ref'd n.r. e.). For this Court to sustain this point of error the appellant must demonstrate that each of these elements was established at the trial of the case.

The appellant cites the case of Odom v. Insurance Company of State of Penn., 455 S.W.2d 195 (Tex.Sup.1970), in support of its position. In *Odom* the Supreme Court determined that where an application for insurance contains false statements, and the application is signed by the applicant and attached to the contract of insurance which is returned to the applicant, the applicant is "conclusively presumed to have knowledge of its contents and to have ratified any false statements therein." Odom, *supra* at 199.

In the case before this Court, the evidence shows that on February 12, 1970, Mr. Shields, an agent for the appellant insurance company, interviewed the insured and took his application for insurance. The application was filled in by Mr. Shields based on the insured's response to the agent's questions. The questions relied upon by the appellant to establish misrepresentation sought to determine whether the insured had ever been treated for or had any known indication of:

(d) heart trouble or murmur, chest pain, high blood pressure, or abnormal pulse?

(h) indigestion, liver trouble, appendicitis, intestinal trouble?

(j) cancer, tumor, ulcer, on any part of the body?

and whether the insured had "ever had X-Ray, Electrocardiogram, Blood Sugar, or any special laboratory tests?" All of these questions were marked "No". The appellee, Gloria Jean Bolton, testified that in the course of the interview her husband told the insurance agent that he had once been treated for stomach trouble which had been diagnosed as indigestion and a nervous stomach, and that he had been X-Rayed at that time. The records of the family physician, Dr. George Johnson, were introduced by the appellee to demonstrate these facts. The records also show evidence of high blood pressure.

The application, completed by the agent, was signed by the insured and returned to the company for approval. On February 25, 1970, the policy was issued and returned to the insured with the application attached. Under the rule in the *Odom* case, the appellant conclusively showed that the insured knew that there were incorrect statements in the insurance application. However, there was a question of fact outstanding on the issue of intentional deception, upon which issue the appellant had the burden of proof.

The testimony of the appellee that the insurance agent was told of the past medical history and the outcome of past treatment, and the absence of any evidence that the agent indicated the presence of any difficulty with insurability upon hearing those facts, distinguishes this case from *Odom*. In *Odom* it was clear that the agent and the insured had been concerned about the insurability issue and there was strong evidence of collusion between the insured and the agent with the intent to defraud the insurance company. This same distinction holds true for the case of Johnson v. Prudential Insurance Co. of America, 519 S.W.2d 111 (Tex.Sup.1975). There, the insurance company had secured favorable jury findings on the issue of wilful deceit.

In this case it may be said that the insured was, under the *Odom* standard, negligent in failing to check through the answers marked on the application, but there is a question for the jury on the issue of intentional misrepresentation. The appellant has therefore failed to establish this defense as a matter of law.

Alternatively, in *Odom,* the representations made by the insured in the insurance contract were, by the terms of the contract expressly warranted to be true.[1] The Supreme Court relied upon this warranty in holding that the insured was, as a matter of law, bound by the statements contained in the application. In Texas State Mut. Fire Ins. Co. v. Richbourg, 257 S.W. 1089 (Tex. Comm'n App.1924, jdgmt. adopted), relied upon the Supreme Court in *Odom,* the insured also warranted that the statements made in the contract were true. In this case, the parties have expressly agreed that "All statements made by any person insured hereunder as the basis for the contract shall, in the absence of fraud, be deemed representations and not warranties." The application signed by the insured stated that:

> The undersigned declares and agrees that (a) the above statements and answers are complete, true and are correctly recorded.
>
> . . .

By the terms of the contract, the insured represented that the statements made in the application were correctly recorded. He did not *warrant* that they were so recorded. This contractual agreement between the parties takes the case out of the rule in the *Odom* case.

■ The contractual agreement placed the burden on the appellant to prove either that there was actual fraud by the insured, or that the insured was inspired by a deliberate purpose to injure the appellant. American Central Life Ins. Co. v. Alexander, 56 S.W.2d 864 (Tex.Comm'n App.1933, jdgmt. adopted); Universal Life & Accident Insurance Co. v. Burden, 294 S.W.2d 855 (Tex.Civ.App.—Fort Worth 1956, no writ). A factual question was raised, and there was evidence that there was no intent to defraud the insurance company. The appellee's testimony that the insured had told the agent of his prior difficulties, coupled with the lack of any evidence that the insured was told there might be trouble insuring him, gives rise to a possible inference that he had no intent to defraud the company. The appellant failed to establish this defense as a matter of law.

■ Although the appellant failed to establish its defense as a matter of law, it is entitled to a new trial in this case.

In response to special issue four which reads:

> Do you find from a preponderance of the evidence that at the time such statement or statements, if any you have so found, were made Gerald C. Bolton knew such statement or statements to be untrue?

The jury responded "We do not". Under Odom v. Insurance Company of State of Penn., *supra,* it is conclusively presumed

---

1. The application which was signed in the *Odom* case read as follows:

I hereby warrant the truth of the above statements and I declare that I have not withheld any information whatever which might tend in any way to increase the risk of the company or influence the acceptance of this application, additionally, I warrant that my automobile will be operated only by persons holding valid drivers' licenses. I understand that any false statement by me will constitute a breach of warranty and cause the policy to be void as provided by the conditions of the policy. I agree that this application shall be the basis of the policy between me and the company. Odom v. Insurance Company of State of Pa., 441 S.W.2d 584, 586 (Tex.Civ.App.—Austin 1969) *affirmed,* 455 S.W.2d 195.
This is compared with the language in this case which reads:

The undersigned declares and agrees that (a) the above statements and answers are complete, true and are correctly recorded; (b) this Application consisting of Part 1 and Part 2 if requested by the Company, shall become part of any policy issued hereon; (c) the insurance shall commence after both (1) a policy issued by the Company is manually delivered to the Owner during the continued good health of the Proposed Insured, his wife if listed in question 1B and all children listed in question 6 and (2) the first premium is paid; (b) acceptance of any Policy issued on this Application shall constitute a ratification of any additions or corrections made by the Company and noted in the space entitled "Home Office corrections and additions." I also agree that the following authorization for additional information shall be part of this Application.

that the insured had knowledge of the incorrect statements made by the agent on the insurance application. This special issue inquired into the question of whether or not the insured knew those answers to be incorrect. Such an inquiry was irrelevant in light of *Odom*.

The questions on the application which were incorrectly answered, asked whether or not the insured had ever had an X-Ray, indigestion trouble or chest pains. It is the uncontroverted testimony of the appellee that the insured told the agent that the answers to these questions ought to be "Yes". The effect of the *Odom* decision is to place the burden on the insured to check over the answers on the application when he signs it, or to inform the insurance company of errors discovered when the application is returned to the insured as part of the insurance contract. In this case, under *Odom*, the insured knew what answers had been recorded by the agent, and, by the appellee's testimony, the insured knew that the recorded answers did not correctly state the facts.

The jury did not answer those special issues dealing with the insured's state of mind when answering the relevant questions on the application for insurance. Those issues were not answered because they were predicated upon an answer of "We do" to special issue number four. As noted above, the jury answered "We do not" to special issue number four and such answer was not permissible under *Odom*. The question of fact as to intent remains outstanding and this case must be remanded for new trial and a determination of whether or not the insured intentionally defrauded the insurance company.

Reversed and remanded.