**SOUTHERN FARM BUREAU LIFE IN-
SURANCE COMPANY, Appellant,**

v.

**Curtis REED et al., Appellees.**

**No. 5060.**

Court of Civil Appeals of Texas,
Eastland.

Feb. 9, 1978.

Rehearing Denied March 9, 1978.

Charles R. Griggs, Nunn, Griggs & Beall, Sweetwater, for appellant.

Davis Scarborough, Abilene, for appellees.

WALTER, Justice.

This appeal involves a life insurance policy issued by Southern Farm Bureau Life Insurance Company on the life of Curtis Reed. Southern Farm sought cancellation of the policy because of several alleged fraudulent and material written representations made by Reed on which Southern Farm relied. Reed died before trial. His widow, Frances Reed, and two sons, Lee Reed and Scott Reed, intervened. Trial was before the court and judgment rendered against Southern Farm. Southern Farm appeals. We affirm.

Southern Farm brought this suit seeking to cancel life insurance policy # 605402 issued to Curtis Reed and life insurance policy # 605403 issued to Reed's employer, The Shoe Tree, Inc., and to annul the waiver of premium disability benefit endorsement to insurance policy # 599092 issued to Reed. Prior to his death, Reed agreed to set aside the waiver of premium disability benefit. A default judgment was rendered against The Shoe Tree, Inc. Policy # 605402 is the only policy in issue on this appeal.

Reed died of emphysema on October 28, 1976. Mrs. Reed testified her husband had pneumonia in 1972 and had shortness of breath for which he used a bronchial dilator. After moving to Abilene, Reed entered a hospital in January of 1973 for diagnostic tests conducted by Dr. Johnny B. French. Dr. French's diagnosis was that Reed was suffering from a severe obstructive ventilatory impairment with restricted flow rates, hyperinflation, wasted ventilation, elevated dead space and elevated airway resistance. Dr. French informed Reed of his condition and told him "our hopes with him would be mainly one of trying to stabilize his problem, that the chances of improving it would be minimal." Reed's condition was termed "chronic obstructive lung disease, primarily pulmonary emphysema, severe." Dr. French recommended Reed stop smoking, use a different bronchial dilator, take prescribed medication, and purchase a home intermittent positive pressure breathing machine if he could afford one.

Reed visited Dr. French in February of 1973 for a posthospital visit. Dr. French stated: "He (Reed) related that he was feeling better, had improved with his exercise regimen of walking and playing golf, and had not been smoking. I noted at this time that he was very encouraged as to how he was doing." After an examination in April, 1973, Dr. French stated: " . . . clinically the man was stable, subjectively improved, although clinically and laboratorily stable."

Mrs. Reed testified that Reed was a "real vivacious person" and that his shortness of breath "was more of an aggravation to him more than anything else. . . . " Reed played golf regularly with the son of the insurance agent, Maurice Newton, who sold Reed the policies. Reed also worked with Mr. Newton's son. Mrs. Reed said her husband never missed a day of work.

At the suggestion of Mr. Newton, Reed was examined by Dr. James Allen Crow. Dr. Crow was selected by Mr. Newton and had previously made medical examinations for Southern Farm. The examination was initially used by Southern Farm in issuing policy # 599092, but was later used in issuing policies # 605402 and # 605403.

Reed and Dr. Crow signed a form entitled, "Statement to Medical Examiner" dated May 20, 1974. This form contains the representations on which Southern Farm has based its cause of action. Another form entitled, "Report of Medical Examiner" was signed by Dr. Crow only. In this report, Dr. Crow diagnosed Reed as "normal" and stated he had "clear" lungs.

Southern Farm contended Reed answered the following questions in the "Statement to Medical Examiner" willfully and with the intent to deceive Southern Farm: (1) "Have you ever been in a hospital, clinic, sanatorium, or institution for observation, diagnosis, operation or treatment?" Reed answered "No."; (2) "Have you ever had x-ray, electrocardiogram, blood studies, or other diagnostic tests?" Reed answered "No."; (3) "To the best of your knowledge and belief, have you ever had or been told that you had: asthma, emphysema, hayfev-

er, chronic cough, spitting of blood, tuberculosis, or any disease or disorder of the lungs or respiratory system?" Reed answered "No."; (4) "Have you ever had high blood pressure, chest pains, shortness of breath, heart murmur, or any disease or disorder of the heart or circulatory system?" Reed answered "No."; (5) "Have you consulted or been treated or examined by any physician or practitioner for any other causes in the past five (5) years?" Reed answered "No."; and, (6) "Do you now have any abnormality, deformity, disease or disorder, or, are you receiving treatment or taking medication of any kind?" Reed answered "No."

■ In order to avoid a policy of insurance on the grounds of misrepresentation, the insurer must plead and prove (1) the making of the representation; (2) the falsity of the representation; (3) that the false representation was material to the risk; (4) that the insurer relied on the false representation in issuing the insurance policy; and (5) that the false representation was made willfully and with the intent to deceive or defraud the insurer or made willfully and with the intention of inducing the insurer to issue the policy. *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820 (1947); *Allen v. American National Insurance Company*, 380 S.W.2d 604 (Tex.1964); *Bynum v. Signal Life Insurance Company*, 522 S.W.2d 696 (Tex.Civ. App.—Dallas 1975, writ ref'd n. r. e.); *First Continental Life & Accident Co. v. Bolton*, 524 S.W.2d 727 (Tex.Civ.App.—Houston (14th Dist.) 1975, writ ref'd n. r. e.). The insurer must prove each of these five elements. If it does not meet its burden on any one, the cause of action fails.

The trial court found in favor of Southern Farm on elements one and two, but against it on elements three, four and five. Neither party contends the trial court erred in its findings on the first two elements.

With respect to element five, the trial court found Reed did not make any of the false representations willfully and with the intent to deceive Southern Farm.

■ Southern Farm contends the trial court erred because the intent to deceive was established as a matter of law. Southern Farm relies on *Texas Industrial Trust v. Lusk*, 312 S.W.2d 324 (Tex.Civ.App.—San Antonio 1958, writ ref'd). There the court stated: " . . . The utterance of a known false statement, made with intent to induce action, in our opinion, is equivalent to an intent to deceive. . . ." Southern Farm urges that since it is certain Reed knew his representations were false and the false representations were made with the intent to induce the insurer to take action in the form of an insurance contract, it follows that the intent to deceive is established as a matter of law. We disagree.

Element five requires a finding that the false representation was made willfully and with the intent to deceive or defraud the insurer *or* that the false representation was made willfully and with the intention of inducing the insurer to issue the policy. In *Lusk*, there was a finding on inducement but not on deception. The court concluded that a finding on inducement was equivalent to a finding on deception in view of the other affirmative findings. In the present case, the trial court did not make a finding on inducement, but did make a specific finding on the issue of intent to deceive. The holding in *Lusk* is therefore distinguishable and inapplicable.

We disagree with Southern Farm's contention for the additional reason that the issues of intent to induce and intent to deceive are questions of fact and not of law. *First Continental Life & Accident Co. v. Bolton*, 524 S.W.2d 727 (Tex.Civ.App.— Houston (14th Dist.) 1975, writ ref'd n. r. e.); *Bynum v. Signal Life Insurance Company*, 522 S.W.2d 696 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.); *Empire Life and Hospital Insurance Company v. Shannon*, 415 S.W.2d 532 (Tex.Civ.App.—Amarillo 1967, no writ).

■ Southern Farm also contends the trial court's findings on intent to deceive are against the great weight and preponderance of the evidence. We have considered the entire record and conclude the trial

court's findings are not against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 622, 244 S.W.2d 660 (1951).

■ In its last point of error, Southern Farm contends the award of attorney's fees to appellees is improper because the appellate fees are not conditional on the appellees *prevailing* at the appellate level. The judgment provided:

"It is further ordered, adjudged and decreed by the Court that FRANCES REED do have and recover judgment of and from SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY in the sum of Three Thousand Seven Hundred Fifty and No/100 ($3,750.00) Dollars as attorneys fees.

It is the further order of this Court that if such case is not appealed, the said judgment must be credited with the sum of One Thousand and No/100 ($1,000.00) Dollars on the attorney's fee leaving recovery for attorneys fees herein in the sum of Two Thousand Seven Hundred Fifty and No/100 ($2,750.00) Dollars.

It is the further order of this Court that if this case is appealed to the Court of Civil Appeals and said case is not carried by appeal or writ of error to the Supreme Court of Texas, that said judgment must be credited with the sum of Five Hundred and No/100 ($500.00) Dollars leaving a recovery for attorney's fees in the sum of Three Thousand Two Hundred and No/100 ($3,250.00) Dollars."

Southern Farm cites *King Optical v. Automatic Data Processing of Dallas, Inc.*, 542 S.W.2d 213 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.) and *T. L. Hastings v. American General Insurance Company*, 547 S.W.2d 360 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.) in support of its contention. *King Optical* and *Hastings* are distinguishable from the present case in that the party awarded the attorney's fees was not completely successful on appeal. Appellees here have been successful. See *Liberty Sign Company v. Newsom*, 426 S.W.2d 210 (Tex.1968). In view of the disposition of this case, we hold any error in awarding attorney's fees is not reversible error. Rule 434, T.R.C.P.

We have carefully examined Southern Farm's remaining points of error and find no merit in them. They are overruled.

Judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

WALTER, Justice.

The appellant insurance company has called our attention to the fact that our opinion contains a misstatement of the facts in that we said, "Prior to his death, Reed agreed to set aside the waiver of premium disability benefit". We acknowledge the mistake and it is deleted from our opinion. Mrs. Reed's testimony reveals policy # 599092 was in fact paid and is not in issue on this appeal.

We have considered appellant's other assignments in its motion for rehearing and find no merit in them. The motion is overruled.