Affirmed in Part, Reversed and Rendered in Part and Memorandum Opinion
filed November , 2010









Affirmed in Part, Reversed and Rendered in Part and Majority
Memorandum Opinion filed November 17, 2010.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00363-CV



BP Lubricant
USA Inc. f/k/a Castrol North America Inc., Appellant 

v.

Jenkins
 Management LLC d/b/a Dr.
Gleem Car wash, Appellee 



On Appeal from
the 127th District Court

Harris County, Texas

Trial Court
Cause No. 2006-47682



 

MAJORITY MEMORANDUM OPINION


            This case
involves alleged breaches of a supply agreement between appellant BP Lubricant
USA Inc. f/k/a Castrol North America Inc. (hereinafter “BP Lubricant”) and
appellee Jenkins Management LLC d/b/a Dr. Gleem Car Wash (hereinafter “Dr.
Gleem”).  The jury found that BP Lubricant breached the agreement and committed
fraud, and awarded Dr. Gleem damages and attorney’s fees.  The trial court
rendered judgment on the verdict and ordered conditional appellate attorney’s
fees.  

On appeal, BP Lubricant (1) challenges the legal and
factual sufficiency of the evidence to support the jury’s findings that BP
Lubricant breached the supply agreement and committed fraud; (2) contends the
trial court erred in awarding damages for breach of contract and fraud because
the award constituted a double recovery; (3) claims Dr. Gleem failed to
segregate its attorney’s fees; and (4) argues that the trial court erred in
failing to render judgment for BP Lubricant on its breach-of-contract claim.  

We agree that the evidence is legally insufficient to
support the jury’s findings that BP Lubricant breached the supply agreement and
committed fraud.  We reverse the judgment against BP Lubricant for damages and
attorney’s fees and render judgment that Dr. Gleem takes nothing.  We disagree
that the trial court erred in failing to render judgment for BP Lubricant on
its breach-of-contract claim.  We affirm the trial court’s take-nothing
judgment as to BP Lubricant. 

I.         Factual and
Procedural Background

In 2003, Steve Belden from Jones Oil, Inc., a
distributor of BP Lubricant products, brought Kevin Jenkins, owner of Dr.
Gleem, a supply agreement from BP Lubricant that would offer Dr. Gleem higher
rebates than what he was receiving.  According to Jenkins’s testimony at trial,
Belden represented that to receive the higher rebates, Dr. Gleem would be
required to make minimum purchases and pay for some equipment upgrades.  

Joe Fernandez, a materials district manager with BP
Lubricant, testified that Belden asked Fernandez to prepare the supply
agreement for Dr. Gleem.  Fernandez did so and gave it to Belden to return with
Jenkins’s signature.  Fernandez stated that Belden had no authority to negotiate
the terms of the agreement on BP Lubricant’s behalf.  

Jenkins attempted to negotiate changes to the
proposed agreement.  First, Belden returned the document to Fernandez with
sections crossed out by Jenkins.  One of the sections Jenkins attempted to
eliminate was the liquidated-damages section.  BP Lubricant’s legal counsel did
not approve of Jenkins’s edits, and Fernandez gave Belden a new copy of the
supply agreement for Jenkins’s signature with the liquidated-damages provision
intact.  Next, Jenkins crossed out the warranty provision.  That amendment was
eventually approved by BP Lubricant’s legal counsel.

The agreement between BP Lubricant[1]
and Dr. Gleem otherwise required Dr. Gleem to purchase certain products from BP
Lubricant in a minimum volume of 15,897 gallons every six months for five
years.  The agreement further provided that BP Lubricant would be the exclusive
supplier of bulk lubricants to Dr. Gleem during the term of the agreement.  In
return, Dr. Gleem received marketing support payments at the end of each
semi-annual interval during the term of the agreement.  

The agreement states that BP Lubricant may use
various distributors to distribute its products.  When the parties entered into
the agreement, BP Lubricant was using Jones Oil as its distributor.  However,
on January 9, 2006, BP Lubricant decided to replace Jones Oil, and BP Lubricant
informed Dr. Gleem of the change.

On April 10, 2006, Arnold Oil Company became BP
Lubricant’s distributor.  Arnold Oil required that Dr. Gleem complete a credit
application and agreement, which included (1) a warranty provision, (2) a
security-interest provision, (3) an agreement that all balances must be paid on
or prior to the tenth of the month or a service charge would be assessed, and
(4) a personal-guarantee provision.  Jenkins, acting on behalf of himself and
Dr. Gleem, refused to sign the credit application and agreement.  

Subsequently, Dr. Gleem attempted to place an order
on credit; Arnold Oil refused to deliver the products on credit without a
signed credit application and agreement.  On that date, Dr. Gleem purchased
Kendall Motor products from Jones Oil.  In May 2006, BP Lubricant advised Dr.
Gleem it was in breach of the supply agreement.    

BP Lubricant filed an original petition in the 127th Judicial District Court of Harris County, alleging a suit on a sworn account, breach of
contract, and attorney’s fees.  Dr. Gleem filed an original answer and
counterclaim for breach of contract, fraud, and attorney’s fees.  

At trial, Jenkins claimed that, despite the express
provision in the contract to the contrary, Belden told him that the consequence
of not purchasing the minimum volume of products specified in the agreement
would be that Dr. Gleem would not receive the rebates.  Dr. Gleem also took the
position at trial that BP Lubricant changed the terms of the agreement when it
began using a new distributor and the new distributor unreasonably required a
credit application and agreement when one had never previously been demanded.   


The jury found BP Lubricant failed to comply with a
material obligation in the supply agreement, and its failure to comply was not
excused.  The jury awarded Dr. Gleem $36,000 for marketing-support payments Dr.
Gleem would have received under the supply agreement and attorney’s fees in the
amount of $21,500.  

The jury also found that Belden was acting as the
agent of BP Lubricant and committed fraud against Dr. Gleem.  The jury awarded
damages in the amount of $24,374.28 on the fraud claim.  The trial court
rendered judgment on November 10, 2008, ordering that (1) BP Lubricant take
nothing by its causes of action against Dr. Gleem; (2) Dr. Gleem have and
recover judgment against BP Lubricant in the amount of $50,374.28 with pre- and
post-judgment interest; and (3) Dr. Gleem receive attorney’s fees in the amount
of $21,500 with post-judgment interest.  

The trial court ultimately signed an amended final
judgment on February 6, 2009, amending the amount of damages to $60,374.28 and
ordering conditional appellate attorney’s fees.  BP Lubricant timely perfected
its appeal to this court.

II.        Analysis

A.   
Judgment on Dr.
Gleem’s Breach-of-contract Counterclaim

In its first issue,[2] BP
Lubricant argues that the trial court erred in rendering judgment for Dr. Gleem
on Dr. Gleem’s breach-of-contract counterclaim because the evidence is legally
and factually insufficient to support the jury’s finding that BP Lubricant
breached the agreement.

In a legal-sufficiency challenge, we review the
evidence in the light most favorable to the challenged finding and indulge
every reasonable inference that would support it.  City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable evidence if a reasonable
fact finder could, and disregard contrary evidence unless a reasonable fact
finder could not.  Id. at 827.  The evidence is legally sufficient if it
would enable fair-minded people to reach the verdict under review.  Id.  The trier of fact is the sole judge of the witnesses’ credibility and the
weight to be given to their testimony.  Id. at 819.  This court cannot
substitute its judgment for that of the trier of fact, so long as the evidence
falls within the zone of reasonable disagreement.  Id. at 822.  But if
the evidence allows only one inference, neither jurors nor the reviewing court
may disregard it.  Id.  

When construing a written contract, we ascertain the
true intentions of the parties as expressed in the instrument.  Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983).  We must examine and consider the
entire writing in an effort to harmonize and give effect to all provisions so
that none are rendered meaningless.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003); Coker, 650 S.W.2d at 393.  If the written
instrument is so worded that it can be given a definite or certain legal
meaning, then the contract may be construed as a matter of law.  Coker,
650 S.W.2d at 393.  

In its first amended answer and counterclaim, Dr.
Gleem asserted that BP Lubricant breached the supply agreement by changing the
terms of the agreement when it began using a new distributor.  Dr. Gleem claims
the new distributor, Arnold Oil, refused to sell products to Dr. Gleem unless
Dr. Gleem complied with the terms of a credit application.  Specifically,
Arnold Oil requested that Dr. Gleem complete a credit application and
agreement, which included (1) a warranty provision, (2) a security interest
provision, (3) an agreement that all balances must be paid on or prior to the
tenth of the month or a service charge would be assessed, and (4) a personal
guarantee provision.

To prevail on a breach-of-contract claim, a party
must prove:  (1) the existence of a valid contract; (2) the party tendered
performance or was excused from doing so; (3) breach of the contract by the
other party; and (4) damages sustained as a result of the breach.  West v.
Triple B Servs., LLP, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.]
2008, no pet.).

Section 3 of the supply agreement states:

3. Assignment. Purchaser acknowledges that in its course of
business, [BP Lubricant] may use various “Distributors” to distribute [BP
Lubricant products] within specified geographic areas. Purchaser shall not
transfer or assign this Agreement (as a result of selling the right to operate
the business that is subject to this Agreement, by operation of law or
otherwise) without the prior written consent of [BP Lubricant], which consent
shall not be unreasonably withheld. Subject to the foregoing, this Agreement
shall bind and inure to the benefit of the parties and their respective
successors and permitted assigns.

Section 2 states, in relevant
part, that “[BP Lubricant]’s sales to Purchaser will be made on the terms
determined by [BP Lubricant] in its reasonable discretion.”  Dr. Gleem argues
that the combination of these terms was unreasonable in light of the parties’
relationship.  

            However, the
agreement explicitly states that BP Lubricant could use various distributors to
distribute its products and that the purchases would be made on reasonable
terms to be determined by BP Lubricant.  The agreement does not state that the
distributors could not require a credit application or that a previous
distributor’s terms would be honored by the new distributor.[3] 
Dr. Gleem simply provided no evidence that the terms imposed by BP Lubricant
were unreasonable by any recognized industry or otherwise relevant standards.

Therefore, the evidence is legally insufficient to
support the jury’s finding on Dr. Gleem’s breach-of-contract counterclaim. 
Accordingly, we sustain this portion of BP Lubricant’s first issue.  As a result of our
disposition, we need not address the portion of BP Lubricant’s first issue that
challenges the factual sufficiency to support the jury’s finding on Dr. Gleem’s
breach of contract counterclaim.  See Tex. R. App. P. 47.1.  

B.    
Judgment on Dr.
Gleem’s Fraud Counterclaim

In its second issue, BP Lubricant contends the trial
court erred in rendering judgment for Dr. Gleem on Dr. Gleem’s fraud
counterclaim because the evidence is legally and factually insufficient that BP
Lubricant committed fraud.   

In its first amended answer and counterclaim, Dr.
Gleem asserted that BP Lubricant fraudulently induced Dr. Gleem to enter into
the agreement in that BP Lubricant represented it to be a rebate agreement
without any obligation for Dr. Gleem to purchase products.  In the alternative,
Dr. Gleem claimed BP Lubricant failed to disclose material facts to Dr. Gleem
which proximately caused damages.  

To prevail on a fraud claim, a party must prove:  (1)
that a material representation was made and the representation was false; (2)
the other party knew the representation was false or made it recklessly as a
positive assertion without any knowledge of its truth; (3) the other party
intended to induce the party to act upon the representation; and (4) the party
actually and justifiably relied upon the representation and suffered injury.[4] 
Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577
(Tex. 2001).    

In the supply agreement, Dr. Gleem agreed to buy from
BP Lubricant its “monthly requirements [ ] for automotive motor oil,
lubricants, greases, fluids and cleaners . . . provided [ ] that such purchases
. . . shall be no less than the minimum aggregate semi-annual volume of 15,897
gallons for each 6 month interval” during the term of the agreement.  The
agreement also provided that BP Lubricant “shall be the exclusive supplier of
bulk lubricants” to Dr. Gleem during the term of the agreement.  In the event
the agreement was terminated other than by mutual consent or expiration, Dr.
Gleem was required to “pay to [BP Lubricant] within thirty (30) days of the date
of notice of such termination liquidated damages equal to $.50 times the
aggregate number of gallons required to be purchased by [Dr. Gleem] . . . less
the number of gallons of [BP Lubricant] [p]roducts actually purchased by [Dr.
Gleem] . . . .”  The agreement states that such damages “are solely in
connection with a breach” of the agreement by Dr. Gleem “arising out of [Dr.
Gleem’s] early termination” of the agreement.

Jenkins testified that Belden brought him the
agreement so Dr. Gleem could receive higher rebates in exchange for paying for
some equipment upgrades.  Jenkins acknowledged that to get the rebate, he
agreed to buy a minimum number of gallons of BP Lubricant product every six
months.  Jenkins stated that Belden explained to him that if Dr. Gleem did not
meet the minimum purchasing requirement, Dr. Gleem would not get the rebate. 
He stated that no one from BP Lubricant contacted him to discuss the terms and
conditions of the agreement and that he was unsure what the damages provision
meant but signed the agreement anyway. 

However, Jenkins also testified that he personally
negotiated the agreement, and he understood the agreement before he signed it. 
In fact, Jenkins particularly attempted to renegotiate specific portions of the
agreement.  He returned the agreement to Belden with sections explicitly
crossed out, including the liquidated-damages provision.  Belden took the
agreement to Fernandez who, in turn, sent it to BP Lubricant’s legal
department.  BP Lubricant’s legal department refused Jenkins’s proposed
amendments with the exception of the warranty provision.  

Therefore, Jenkins is charged with knowledge at the
time he signed the agreement (1) that it contained a liquidated-damages
provision and (2) his request to cross it out was not accepted by BP
Lubricant.  See Mayes v. Stewart, 11 S.W.3d 440, 451 (Tex. App.—Houston
[14th Dist.] 2000, pet. denied) (quoting Bynum v. Signal Ins. Co., 522
S.W.2d 696, 700 (Tex. Civ. App.—Dallas 1975, writ ref’d n.r.e.) that “[i]f the
person to whom a false representation is made is aware of the truth, it is
obvious that he is neither deceived nor defrauded, and, therefore, any loss he
may sustain is not traceable to the representation but is self-inflicted”). 

Even if Belden was acting as an authorized agent for
BP Lubricant during the negotiation of the supply agreement[5]
and Belden’s statement could be construed as communicating to Jenkins that the
only consequence of not meeting the minimum purchase requirement was no rebate,
Jenkins could not justifiably rely, as a matter of law, on an alleged oral
statement that unequivocally contradicts the express and unambiguous terms of a
written contract that he negotiated.[6]  See
TMI, Inc. v. Brooks, 225 S.W.3d 783, 795 (Tex. App.—Houston [14th Dist.]
2007, pet. denied); DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.,
112 S.W.3d 854, 858-59 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (en
banc).  Here, the unambiguous terms of the agreement were that Dr. Gleem agreed
to buy from BP Lubricant a minimum amount of product for each six-month
interval of the five-year contract and BP Lubricant would be the exclusive
supplier of bulk lubricants to Dr. Gleem during the term of the agreement.  In
the event of a breach of the agreement, BP Lubricant retained rights under the
liquidated-damages provision.  

Therefore, the evidence is legally insufficient to
support the jury’s finding on Dr. Gleem’s fraud counterclaim.  Accordingly, we
sustain this portion of BP Lubricant’s second issue.   

As a result of our disposition of this issue, we need
not address (1) the portion of BP Lubricant’s second issue that challenges the
factual sufficiency to support the jury’s finding on Dr. Gleem’s fraud
counterclaim; (2) the portion of BP Lubricant’s second issue that challenges
the legal and factual sufficiency of the evidence to support the jury’s finding
that Belden had actual or apparent authority to act on behalf of BP Lubricant;
and (3) BP Lubricant’s third issue that the trial court erred in awarding Dr.
Gleem damages for fraud and breach of contract because the award constituted
double recovery.  See Tex. R. App. P. 47.1.

We hold that the evidence is legally insufficient on
Dr. Gleem’s breach-of-contract and fraud counterclaims.  We reverse the
judgment against BP Lubricant and in favor of Dr. Gleem for damages and
attorney’s fees.  See Parker Drilling Co. v. Romfor Supply Co., 316
S.W.3d 68, 77-78 (Tex. App.—Houston [14th Dist.] 2010, no pet. h.) (party not
entitled to breach-of-contract damages or attorney’s fees when legally
insufficient evidence); Johnson & Johnson Med., Inc. v. Sanchez, 924
S.W.2d 925, 930 (Tex. 1996) (rendering take-nothing judgment on fraud claim
when no showing of detrimental reliance).  We render judgment that Dr. Gleem
takes nothing from BP Lubricant.[7]  

C.   
Judgment for BP
Lubricant

In its fifth issue, BP Lubricant contends the trial
court erred in failing to render judgment in its favor on its breach-of-contract
claim because the evidence conclusively established that Dr. Gleem breached the
agreement first, thereby excusing BP Lubricant’s performance as a matter of
law.  BP Lubricant claims that, upon Dr. Gleem’s breach, BP Lubricant was
entitled to its liquidated damages under the agreement’s liquidated-damages
provision.  Specifically, BP Lubricant contends the evidence conclusively
established that Dr. Gleem breached the agreement first when Dr. Gleem stopped
purchasing under the agreement prior to the end of the five-year term.  BP
Lubricant also argues that Dr. Gleem repudiated the agreement by refusing to
perform and then purchasing a competitive brand from Jones Oil.

We review the trial court’s denial of a motion for
judgment notwithstanding the verdict (jnov) under a legal-sufficiency
standard.  See Wilson, 168 S.W.3d at 823.  In a legal-sufficiency
challenge by a party with the burden of proof at trial, we examine the entire
record to determine if the appellant established his claim as a matter of law. 
See id. at 825-26; Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989).  Only if the claim is established as a matter of law will
we sustain BP Lubricant’s issue.  See Sterner, 767 S.W.2d at 690.    

To prevail on its breach-of-contract claim, BP
Lubricant had to prove:  (1) the existence of a valid contract; (2) BP
Lubricant tendered performance or was excused from doing so; (3) breach of the
contract by Dr. Gleem; and (4) damages sustained as a result of the breach.  See
Triple B Servs., LLP, 264 S.W.3d at 446.

Section 8 of the agreement states:

8.  Damages. In the event that this Agreement is terminated
other than by mutual consent or expiration under Section 4 above, Purchaser
shall pay to [BP Lubricant] within thirty (30) days of the date of notice of
such termination liquidated damages equal to $.50 times the aggregate number of
gallons required to be purchased by Purchaser (the minimum aggregate
semi-annual volume multiplied by 10) less the number of gallons of [BP
Lubricant] Products actually purchased by Purchaser pursuant to this Agreement
from the Effective Date until the date of termination.  Such damages are solely
in connection with a breach by Purchaser of this Agreement arising out of
Purchaser’s early termination of this Agreement and are in addition to any other
claim, right or remedy [BP Lubricant] may have.  The parties agree that such
liquidated damages represent a reasonable estimate of the losses that would be
sustained by [BP Lubricant] as a result of early termination of this Agreement
and that such liquidated damages are intended to compensate such losses and are
not a penalty.

Therefore, under section 8,
liquidated damages are recoverable only if the supply agreement is “terminated”
other than by mutual consent or expiration.  Section 7 of the agreement sets
forth four ways in which the agreement may be terminated.  Under section 7, as
it applies in this case, the agreement could be terminated:

(c) by the non-defaulting party, in the event that the
other party breached any material obligation under the agreement or under any
other loan agreement between the parties and such breach continued for 30 days
after receipt by the defaulting party of written notice of the breach from the
non-defaulting party[.]   

BP Lubricant contends Dr.
Gleem ended the agreement early and, therefore, owes liquidated damages under
the liquidated-damages provision.  However, there was no testimony that BP
Lubricant affirmatively terminated the agreement as termination is defined in
section 7 of the agreement.[8]  

Fernandez testified that he did not know whether BP
Lubricant had ever terminated the agreement.  While a senior attorney for BP
Lubricant sent Jenkins notices of Dr. Gleem’s alleged breach, the letters did
not state that BP Lubricant was terminating the agreement.  Because BP
Lubricant did not terminate the agreement consistent with the relevant contractual
provisions, the liquidated-damages provision was never triggered.  See
Huntley v. Enon Ltd P’ship, 197 S.W.3d 844, 852-53 (Tex. App.—Fort Worth
2006, no pet.) (section in contract allowing party to recover earnest money as
liquidated damages never triggered, therefore party could not enforce it).  

Damages are an essential element of a breach-of-contract
action.  See MBM Fin. Corp. v. Woodlands Operating Co., L.P., 292
S.W.3d 660, 666 (Tex. 2009); Triple B Servs., LLP, 264 S.W.3d at 446. 
Even if BP Lubricant proved the other elements of its breach-of-contract claim,
BP Lubricant did not prove it was entitled to liquidated damages under the
agreement.  In addition, BP Lubricant did not seek damages other than through
its liquidated-damages provision.[9] 
Therefore, we overrule BP Lubricant’s fifth issue.  Accordingly, we affirm the
take-nothing judgment as to BP Lubricant’s breach-of- contract claim. 

III.      Conclusion

            We sustain BP Lubricant’s issues regarding
Dr. Gleem’s breach-of-contract and fraud counterclaims.  We reverse the
judgment against BP Lubricant for damages and attorney’s fees and render
judgment that Dr. Gleem takes nothing.  We overrule BP Lubricant’s issue
regarding its own breach-of-contract claim.  We affirm the trial court’s
take-nothing judgment as to BP Lubricant.  

 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Brown,
Sullivan, and Christopher.  (Christopher, J. concurs in result only, without
opinion.)

 









[1] The
parties to the supply agreement are Castrol North America Inc. and Dr. Gleem. 
The parties do not dispute that BP Lubricant was formerly known as Castrol
North America Inc.  For clarity, we will refer to this party as BP Lubricant.





[2] BP
Lubricant lists seven issues in its “Issues Presented.”  However, in the
“Argument” section of the brief, the issues are organized differently.  For
clarity, we will refer to the issues as they are addressed in the “Argument”
section of the brief.  





[3] In its
reply brief, Dr. Gleem contends another example of BP Lubricant’s breach of the
agreement is the fact that the contract does not require cash-only sales unless
Dr. Gleem’s credit is determined to be impaired.  The agreement states:  

In the event that [BP
Lubricant] determines, in its sole discretion, that Purchaser’s financial
position becomes impaired or unsatisfactory to [BP Lubricant] at any time
during the term of this Agreement, then [BP Lubricant] shall have the right to
require Purchaser to make cash payments or furnish satisfactory security before
any further deliveries are made hereunder.

This provision gives BP
Lubricant the option to suspend purchase on credit in the event Dr. Gleem’s
financial position became impaired or unsatisfactory.  The agreement also
states, without limitation, that BP Lubricant’s sales to Dr. Gleem will be made
on the terms determined by BP Lubricant in its reasonable discretion.  Arnold
Oil, BP Lubricant’s new distributor, offered two options: (1) payment on
account after completion of a credit application or (2) cash payments.  No
evidence was presented that these terms were unreasonable.  





[4]
Jury questions 10, 11, and 12 dealt with whether
BP Lubricant committed fraud.  The jury was asked if, prior to the execution of
the October 23, 2003 supply agreement, Belden committed fraud against Dr.
Gleem.  The question was submitted only with the definition for
misrepresentation; the question did not include a definition for failure to
disclose.  The jury answered affirmatively.  The jury was also asked if Belden
was acting as the agent of BP Lubricant when he committed the alleged fraud;
the jury answered affirmatively.  The jury then awarded $24,374.28 in damages
for the alleged fraud.

 





[5] The jury
was instructed that “the distributor for BP Lubricant was the agent of BP
Lubricant USA Inc., formerly known as Castrol North American Inc. with regard
to the sale and delivery of bulk lubricants” and the distributor at the time
the written agreement was negotiated was Jones Oil.  During closing argument,
BP Lubricant attempted to distinguish this instruction by contending that while
Jones Oil was the agent with regard to the sale and delivery of its bulk
lubricants, Jones Oil was not BP Lubricant’s agent for purposes of negotiating
the supply agreement.





[6] Neither
party contends this is a case in which one makes a specific misrepresentation
and then relies on a general provision in the contract to avoid a fraud claim. 
See, e.g.,Schlumberger Tech.
Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997) (discussing
waiver-of-reliance provision in relation to fraudulent-inducement claim); Prudential
Ins. Co. of America v. Jefferson, 896 S.W.2d 156, 162 (Tex. 1995)
(discussing “as is” provision in written contract in relation to fraud
claim).   





[7]
In its fourth
issue, BP Lubricant contends that the trial court erred in awarding Dr. Gleem
attorney’s fees because Dr. Gleem failed to segregate its attorney’s fees. 
Because of our disposition, we need not address this issue.  See Tex. R.
App. P. 47.1

 





[8] While
section 8 of the agreement uses the word “terminate” to describe Dr. Gleem’s
early ending of the agreement, the “Termination” section of the agreement does
not provide for the agreement to be terminated by the defaulting party. 





[9] Jury
question 6 read: “Find the amount of liquidated damages as calculated under
section 8 of the October 23, 2003 Supply Agreement.”