## G. P. CHERRY v. FIRST TEXAS CHEMICAL MANUFACTURING CO. ET AL.

### No. 1993. Decided January 5, 1910.

**1.—Fraud—Corporation—Purchase of Stock.**

Evidence considered and held to require the submission of the issue as to fraudulent representations by the agent of a corporation inducing a purchase of its stock. (Pp. 83–86).

**2.—Fraudulent Representation—Fact—Opinion.**

A representation of the agent of a corporation in selling its stock that it was paying a big dividend was one of fact and not of the opinion of the agent, though the company, recently organized, had not been long enough in business to declare any dividend, the party to whom the representation was made, not knowing such fact. (P. 85).

**3.—Same.**

A representation, that corporate stock would pay more than 35 percent, was not necessarily an expression of mere opinion by the agent making it, relating wholly to the future, since it might be understood by the party to whom it was made as a conclusion indicated by business already transacted. (P. 85).

**4.—Notice—Corporation—Director.**

A corporation acquiring a promissory note from another corporation is not charged with notice that the latter had obtained the note by fraud upon the maker from the fact that a director in and general manager of the former company was also a director in the latter one. (P. 86).

**5.—Negotiable Instrument—Innocent Purchaser—Collateral Attack.**

One acquiring title to a promissory note, only as collateral security, for a debt owing to it by the assignor, the payee, will be protected as an innocent purchaser against defenses available by the maker against the payee only to the extent of the indebtedness secured and not to the full amount of the note. (P. 86).

Error to the Court of Civil Appeals from the Sixth District in an appeal from Dallas County.

The First Texas Chemical Manufacturing Company sued the Walker Chemical Company and Cherry and obtained judgment. Cherry appealed and on affirmance procured writ of error.

*N. J. Wade* and *Pierson & Pierson,* for plaintiff in error.—The court erred in holding as a matter of law that there was no fraud shown, as this was a question of fact to be determined by the jury under appropriate instructions as to the law from the court. Byers Bros. v. Maxwell, 73 S. W., 437; Weaver v. Nugent, 72 Texas, 272; Peiser v. Peticolas, 50 Texas, 646; Kerr v. Hutchins, 46 Texas, 774; Prude v. Campbell, 85 Texas, 4; Shifflet v. St. Louis S. W. Ry. Co., 18 Texas Civ. App., 57; Lee v. International & G. N. R. Co., 89 Texas, 583; Choate v. San Antonio & A. P. Ry. Co., 91 Texas, 406.

First Texas Chemical Manufacturing Company, which is a corporation, is not an innocent purchaser such as the law will protect, of the Cherry note. The connection of its vice-president and manager, M. R. Bruckner, with Walker Chemical Company (incorporated), in which he was secretary, and his intimate relations and active service in promoting Walker Chemical Company, had the effect of constructive notice of the fraud and failure of consideration invalidating said note. Traders National Bank v. Smith, 22 S. W., 1056; Meade v. Sandige, 9 Texas Civ. App., 360; Greneaux v. Wheeler, 6 Texas, 525; McAnelly v. Chapman, 18 Texas, 199.

*Leake & Henry,* for defendant in error, the First Texas Chemical Mfg. Co.

*Cecil L. Simpson,* for defendant in error, the Walker Chemical Co.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This action was brought by the First Texas Chemical Company, a corporation, against the Walker Chemical Company, also a corporation, upon an account for the sum of $795.80 for goods sold and delivered, and against the plaintiff in error, Cherry, upon a note executed by him to the Walker Chemical Company and by it delivered to plaintiff as collateral security for the account sued on. The note, with stipulated attorney's fee, amounted to more than $1000, and plaintiff sought judgment upon it against Cherry in its own behalf for enough to satisfy the account and in behalf of the Walker Chemical Company for the balance. The Walker Chemical Company in its answer admitted its indebtedness to plaintiff and joined in its prayer for judgment on the note. Cherry defended on the ground that the note sued on was given for stock in the Walker Chemical Company,

and was procured by misrepresentations and fraud of its president and manager. The plaintiff, in reply, alleged that it acquired the note before maturity and without notice of the defenses alleged. The trial court, after the evidence. was in, instructed a verdict in favor of plaintiff as prayed for, and its judgment was affirmed by the Court of Civil Appeals for the reason that the evidence was insufficient to raise an issue as to the defense of fraud alleged by Cherry in the procurement of the note. It is very clear that Cherry did testify to the making of the material representations by Walker, the president and manager of the Walker Chemical Company, to induce him to buy the stock and give the note for the price of it. Cherry's place of business is in Rhome, Wise County, that of Walker in Bosque County and that of the Walker Chemical Company is stated in its charter to be in Dallas County, although, according to some of the testimony, it does not seem to have any office anywhere. Walker had been the proprietor of a formula for the compounding of a medicine called "Single Stroke Antiseptic" and had been having it put up by the plaintiff company and selling it until the incorporation of the Walker Chemical Company, which took place November 13, 1905, with himself, Simpson and Bruckner as corporators. The capital stock of the company was stated at $50,000, divided into five hundred shares of $100 each. Three hundred shares were issued to Walker in payment for his formula, five shares were issued to Bruckner and two shares to Simpson in payment for services rendered by them. No other stock has been sold but that to Cherry. Cherry had bought some of the antiseptic from Walker in October, 1905, and, according to his testimony, about December 18 or 20, 1905, Walker came to his place of business and gave him a prospectus of the company and requested him to look over it, saying that they had organized a company and were ready to dispose of stock and would like for him (Cherry) to become a stockholder and vice-president. Walker further said the company was already "standing on its feet," that they were already doing business and it was not like starting a patent remedy from the beginning. Cherry did not read the prospectus but, after a few days, Walker again came to see him and renewed his solicitations, and, on being told that Cherry did not have money to buy stock, offered to sell it at fifty cents on the dollar and to take Cherry's note in order to get him in. Cherry says that thereupon he asked some questions in regard to it, not having yet looked over the prospectus, and was told that the company was paying a big dividend. "I put the question direct to him if it would pay as much as thirty-five percent and he said it would pay more." Walker further stated the amount of the capital stock and said it would always pay a good dividend as it was not made large in order that it might do so; that he (Walker) had subscribed for three hundred shares of the stock; that most of the stock had been sold, and that if Cherry wanted to get in on this he would have to get his stock and be in a hurry about it; that they had enough business to construct their laboratory to begin the manufacture of the remedy and other formulas and that they intended to manufacture as soon as they got their own laboratory. Walker denied making the most material of these

representations, but that of course raised only an issue of fact. Cherry further testified that he had no notice or knowledge of the financial condition of the company and that he was influenced by Walker's statements to execute the note for the stock. His further testimony shows that which finally decided him was the representations about the amount of dividend.

The Court of Civil Appeals were of the opinion that Cherry's testimony, when reasonably viewed, showed that he did not rely on and was not in fact deceived by any misrepresentation of fact, but was controlled by the mere expression of Walker's opinion as to the dividend which would be paid on the stock. We are of opinion that, to say the least of it, this was not so clear as to justify the withdrawal of the question from the jury. In the first place, it is not at all clear that the statement was given as a mere opinion. It was first stated that the business *was paying* a big dividend, and the answer given to the question asked, as to the percentage, might well be understood as referring to what was then being yielded. It is true that the company had not been in existence long enough to justify any such statement, but we do not find that it appears beyond question that Cherry knew and appreciated the force of that fact. In effect, he testifies that he believed and was induced to act by Walker's statements and we are unable to see that his further testimony conclusively shows that this was not true. But if it were conceded that Cherry knew and had in mind the fact that the company had been so recently organized that it could not as yet have been paying a dividend, it still would not follow that he could not and did not rely on the representations. The conversation was as to the character and extent of the business done and the representation as to dividends might naturally have been regarded by Cherry as being of a conclusion indicated by that business as it had already been transacted. And if the statement that the dividend would amount to more than thirty-five percent should be regarded as an opinion, relating wholly to the future, that still would not justify the refusal to submit the issue of fraud. While that may have been the particular matter that operated decisively in gaining Cherry's consent, its persuasive influence naturally would have been derived very largely from the statements of facts by which it was accompanied and upon which it appeared to be based. The statements that the capital stock of $50,000 was so nearly sold that hurried action was necessary to secure any, and those as to the extent of the business done and its results would naturally influence the mind of one having confidence in the person making them, as Cherry had in Walker, either to accept the conclusion of that person, or to form a favorable one of his own. The fact that the stock was offered at fifty cents on the dollar, taken either alone or along with other circumstances, does not force the conclusion that thereby the representations made were robbed of their power naturally to deceive one situated as Cherry was, or that he was not in fact deceived. Those are proper questions for the jury. Substantially all of the statements to which we have just referred were untrue. None of the stock had been sold in any such sense as would naturally be understood from a statement like that testified

to by Cherry when made in such a connection and for such a purpose. Not a dollar's worth of assets, such as the law contemplates as the consideration for stock, had come to the company as the consideration of that for $30,000 issued to Walker. O'Bear-Nester Glass Co. v. Antiexplo Co., 101 Texas, 431. The company had no property but the formula, no actual place of business, had done no considerable business, had not paid and has never paid any dividend. Such of its medicine as it was trying to sell was being put up for it by the plaintiff as it was needed. It had no money to enable it to establish a laboratory and was doing no such business as to justify a statement that it was then or soon afterwards would be, in a condition to set up such an establishment. Indeed, if it were found that Walker made all the statements to which Cherry testifies, the most material of which, however, are denied by the former, we think a jury would be authorized to find that they were made with the intent to deceive and defraud, and that they accomplished their purpose.

Of course the plaintiff is not affected by the defense set up to the note unless it is chargeable with notice of it. Bruckner was a director in the plaintiff corporation and its general manager when the note was acquired by it, and, at the same time, was a director in, and secretary of, the Walker Chemical Company. There is no evidence that in either capacity he ever had notice of any fraud practiced by Walker upon Cherry, and we have not the question that often arises as to the effect of notice received by one who is at the same time an officer or agent of two corporations, while acting for one upon the rights of the other. It is quite clear, we think, that the mere fact that Bruckner was an officer of each of the companies did not charge plaintiff with notice of what some other officer of the defendant did. If plaintiff had acquired the note absolutely we see no reason for holding that in the present state of the evidence a peremptory instruction in its favor would not have been correct. But it holds the note only as collateral security for a smaller amount and when that is satisfied its rights are satisfied. It asserts the right of the Walker Chemical Company to the balance and by the judgment has conclusively established that right against Cherry. That judgment, therefore, can not be sustained by the fact that it is an innocent purchaser, and we can not render such a judgment here as will protect its rights and at the same time dispose of the entire case as it is made by the petition. The judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*