**TEXAS INDUSTRIAL TRUST, Inc.,**
**Appellant,**

v.

**Myrtle M. LUSK, Appellee.**

No. 13280.

Court of Civil Appeals of Texas.

San Antonio.

March 12, 1958.

Wm. Andress, Jr., Dallas, for appellant.

Johnson, Hester & Jenkins, Harlingen, for appellee.

POPE, Justice.

Plaintiff, Myrtle M. Lusk, an aged widow, sued to rescind two deeds to property, which she gave Texas Industrial Trust, Inc., in exchange for what proved to be worthless corporate stock. She tendered back all the stock. A jury found that defendant, acting through its president, on August 18, 1954, fraudulently represented to plaintiff she could get $1 per share for her stock after January 1, 1955; that defendant corporation would pay dividends after January 1, 1955, and that plaintiff, after January 1, 1955, could secure money on her stock when she needed it. The court gave judgment for the plaintiff rescinding her two deeds. The court also gave plaintiff judgment in the sum of $3,845 as rentals collected by defendant corporation on the property. Defendant appeals.

Defendant corporation urges: (1) That there are no pleadings and evidence to support findings of fraudulent statements about the payment of future dividends on the

stock; (2) that there were no findings of a present false intent concerning payment of future dividends, future value, and future ability to convert the stock into cash if needed; (3) that plaintiff failed to prove the element of pecuniary damages; (4) that there is no evidence to support the finding and judgment that defendant corporation received $3,845 as rentals from the property plaintiff conveyed to defendant in exchange for the stock, and (5) that certain evidence was improperly admitted.

■ The pleadings amply alleged fraudulent statements concerning the payment of future dividends. Plaintiff alleged that she conferred with the president of defendant corporation on August 18, 1954, at which time he represented that the dividends from the stock would yield plaintiff substantial returns, and that if she would hold the stock until January 1, 1955, she could sell her stock and always get money on it, and that she could get at least $1 per share for all or any part of the stock she bought. There were no exceptions to the pleadings, and we consider the pleadings adequate notice of this complaint by plaintiff. Plaintiff supported these pleadings by her own testimony that the corporation's president told her, "if I invested in it I could always get good returns on my money and it wouldn't be long before it would double its value. * * * He said it would double in value and we would be getting, he thought, would be paying the dividends by the first of the year, that was his intention to pay some of the dividends by the first of the year. * * * That was their plan to pay some dividends the first of the year and he said if I could hold my stock until the first of the year, for six months, then I could draw on some of them, that I could get money any time I needed it." In answer to the direct question whether she would have bought the stock if the president had not represented that she would receive dividends after January 1, 1955, she replied, "No, I certainly wouldn't, because I didn't have very much means and that all the means I had." Plaintiff, herself, therefore,

testified directly to the point, and we cannot say that there is no evidence in support of the finding. Defendant's prospectus and advertising material greatly exaggerated the financial status of the company.

■■ Defendant corporation next complains that the trial court failed to submit an issue which inquired if the fraudulent intent on the part of the corporation existed at the time the representations were made. The point, as we understand it, recognizes that fraud may arise with reference to representations about the future value and dividends on corporate stock if the representations were known to be false and were made to deceive the plaintiff. Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1; Cherry v. First Texas Chemical Mfg. Co., 103 Tex. 82, 123 S.W. 689; Riedel v. C. R. Miller Mfg. Co., Tex.Civ.App., 18 S.W.2d 264; Texas Co-op. Inv. Co. v. Clark, Tex. Civ.App., 216 S.W. 220; 10B Tex.Jur., Corporations, §§ 135, 183; accord, Peerless Fire Ins. Co. v. Reveire, Tex.Civ.App., 188 S.W. 254; 20A Tex.Jur., Fraud and Deceit, § 47. The point is that the jury found that there were three different representations of future situations which were false, but that the court failed, over objection of defendant corporation, to submit an issue whether there was a present intent by defendant not to perform with respect to each of the representations.

The court submitted groups of issues for each of the three claimed false representations. It submitted issues inquiring if on August 18, 1954, (1) defendant made the representation, (2) if the representation was false, (3) if it was made with knowledge that it was false, (4) if plaintiff relied upon the representation, (5) if defendant made the representation with intent to induce plaintiff to invest in the stock, and (6) if the representation did induce plaintiff to invest in the stock. All those questions were answered in the affirmative on each of the three separate groups of issues. The first, third, and fifth of those issues, blended together, mean that on August 18,

1954, defendant made a representation concerning a future fact, which he then, on August 18th, knew was false, and that he made it to induce plaintiff to buy the stock. The utterance of a known false statement, made with intent to induce action, in our opinion, is equivalent to an intent to deceive. Accord, Hartford Accident & Indemnity Co. v. Graves, Tex.Civ.App., 148 S.W.2d 859, 861.

Defendant corporation's next point is that the plaintiff failed to prove damages. This was a suit for rescission. Plaintiff conveyed an eighteen-acre farm to the defendant by one deed, and by another deed conveyed a lot on which four furnished apartments and two rent houses were located. Defendant corporation agreed to issue to plaintiff 36,300 shares of stock for these two deeds, and the stock was valued at $1 per share. Plaintiff also purchased for cash 200 additional shares for $200. Hence, plaintiff was entitled to receive 36,-500 shares of stock. Actually, the defendant corporation issued her only 35,700 shares, 800 less than she was entitled to. The stock had no value according to the evidence, and the company was transacting practically no business by which it could earn money. Its chief money producing property consisted of the property which plaintiff had conveyed to defendant. The farm and rental properties produced substantial rentals annually.

■ In suits for rescission, some damages must be proved. Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S.W. 462, 51 A.L.R. 1; Nance v. McClellan, Tex.Com.App., 126 Tex. 580, 89 S.W.2d 774, 777, 106 A.L.R. 117. In the Russell case, however, the Supreme Court stated that the rule in rescission cases required only a showing of substantial damage rather than the amount of the damage. "In an action for rescission, the amount of the damage is immaterial, provided it is substantial." [113 Tex. 441, 258 S.W. 464.] In our opinion, the loss of the farm and the rental units, and the rentals on this property, amounted to substantial damages.

Kanaman v. Hubbard, 110 Tex. 560, 222 S. W. 151, 152, affirming, Tex.Civ.App., 160 S.W. 304, 307; Collier v. Bankston-Hall Motors, Tex.Civ.App., 267 S.W.2d 898; Wise & Smoot v. King, Tex.Civ.App., 161 S.W.2d 295, 297.

The record is undisputed that plaintiff suffered substantial damages by the transfer of the real estate which continuously produced substantial income, and plaintiff therefore satisfied the rule that she must show damages in an action for rescission.

■ Defendant corporation challenges the sufficiency of the evidence to support the jury finding that the property which it had received from plaintiff had produced as rentals the sum of $3,845. The court properly excluded, as hearsay, the evidence pertaining to rentals on the farm, and we shall disregard that loss. The other property consisted of several rental apartments and two rent houses. One of the rent houses was occupied by defendant's manager, and while that house ordinarily rented for $50 per month, we may also exclude that evidence as not being within the jury inquiry about the amount of money "taken in by defendant Texas Industrial Trust, Inc., from the rental of the properties * * *." The manager could not produce records covering the full period, though he was defendant's local manager. From the skimpy records he produced, three apartments rented for a total of $100 per month, and the rent house, other than the one the manager occupied, rented for $50 per month. The jury verdict would have been supported by the evidence if it had concluded from the inadequate records and uncertain answers of defendant's manager, that the property drew in cash the sum of $150 per month from August, 1954, to April, 1957, the date of trial. Such a conclusion would have supported a verdict for $4,800. The jury found that only $3,845 was taken in. The evidence supports the jury finding.

■ The trial court permitted a Deputy Securities Commissioner to testify concerning the records of the Securities Commis-

sioner, which he had in his custody. The Deputy was in Hidalgo County with the original records and plaintiff, Lusk, subpoenaed him. Over objection, he testified about the contents of his records. The objection was that the Deputy could not properly remove the records from Travis County and the archives of the State. There is no rule which limits proof of official records by certified copies, under Article 3731a, Vernon's Ann.Civ.St. Moreover, Section 6 of that Article states that proof of official records or of an entry or lack of entry in such records may be proved by any method authorized by the rules of evidence at common law. The original records are admissible under the common law. 32 C.J.S. Evidence §§ 626, 637. Defendant complains that the Deputy Commissioner testified to matters without introducing the supporting official documents. We find no such objection to the evidence in the record.

The judgment is affirmed.