IN THE
TENTH COURT OF APPEALS


No. 10-13-00369-CV

VERONICA NANCARROW,

                                                    Appellant

 v.

WADE W. WHITMER, M.D.,

                                                    Appellee

From the 361st District Court
Brazos County, Texas
Trial Court No. 11-003427-CV-361

## O P I N I O N

The events and the summary-judgment evidence relevant to this appeal are set

forth in the following timeline:

- **December 20, 2011:** Appellant Veronica Nancarrow sued Appellee Wade
  W. Whitmer, M.D., alleging medical negligence during her shoulder
  surgery.

- **June 28, 2013:** Nancarrow's counsel had a telephone conversation with
  Dr. Whitmer's counsel, during which Dr. Whitmer's counsel informed
  Nancarrow's counsel for the first time that, in addition to Dr. Whitmer, he
  would be designating J.P. Bramhall, M.D., as a testifying expert.  Dr.

Whitmer's counsel also allegedly said that he had tried to find another orthopedic expert but had been unable to locate an expert who was willing to give testimony in support of Dr. Whitmer's treatment of Nancarrow.

- **July 1, 2013:** Nancarrow sent a settlement demand to Dr. Whitmer's counsel, offering to settle the case for a cash payment of $200,000, the limits provided by Dr. Whitmer's primary policy.

- **July 3, 2013:** Dr. Whitmer served Nancarrow with his responses to Nancarrow's requests for disclosure. As had been indicated in the June 28 telephone conversation, Dr. Whitmer designated Dr. Bramhall as a testifying expert. Dr. Whitmer also included the following statements regarding the substance of Dr. Bramhall's opinions and his anticipated testimony:

  > It is Dr. Bramhall's professional opinion that Dr. Whitmer's evaluation, care and treatment of patient Veronica Nancarrow met all applicable standards of care for a board certified orthopedic surgeon practicing in College Station, Texas, and that no action of [*sic*] omission of Dr. Whitmer was a proximate cause of Plaintiff's alleged damages herein. Dr. Bramhall will testify Plaintiff suffered a severe injury to her shoulder in the fall of 10/13/2009 which, in the absence of any action or omission of Defendant, was a proximate cause of Plaintiff's ultimate injuries and/or damages herein…. Dr. Bramhall will testify there were other procedures possible for Plaintiff to undergo rather than a reverse shoulder procedure, and that such procedure has left her with few future options. Dr. Bramhall will testify there is insufficient data to suggest Plaintiff will need to undergo a future revision surgery or other future surgery as a result of her injuries.

- **July 18, 2013:** Nancarrow's counsel received a telephone call from Dr. Whitmer's counsel, informing him that Dr. Whitmer was willing to pay the policy limits of $200,000 to settle the case.

- **July 23, 2013:** The settlement of the claim for $200,000 was memorialized in a Rule 11 agreement.

- **July 30, 2013:** Nancarrow and her counsel learned that Dr. Whitmer's expert disclosure was allegedly false because Dr. Bramhall had actually

refused to testify on Dr. Whitmer's behalf. Dr. Bramhall had never expressed the opinions attributed to him in Dr. Whitmer's expert disclosure and would not testify to them if called as a witness.

- **August 1, 2013:** Dr. Whitmer filed a motion to enforce the settlement agreement and a counterclaim asserting breach of contract. Nancarrow in turn filed a motion for sanctions against Dr. Whitmer, arguing that he perpetrated a fraud upon the court.

- **August 2, 2013:** Nancarrow filed a motion to rescind the Rule 11 agreement based on Dr. Whitmer's alleged fraud.

- **August 5, 2013:** Nancarrow filed an amended motion for sanctions against Dr. Whitmer.

- **August 6, 2013:** The trial court held a hearing on Nancarrow's and Dr. Whitmer's competing motions.

- **September 23, 2013:** The trial court signed an order granting Dr. Whitmer's motion to enforce the settlement agreement. The order stated that "the Rule 11 agreement dated July 23, 2013 signed by both counsel, and filed with the records of the court, is a valid and binding contract for settlement which was not obtained through fraud or other material misrepresentation by Defendant or his counsel."

- **October 14, 2013:** Nancarrow filed a notice of appeal asserting that she was appealing the trial court's order granting Dr. Whitmer's motion to enforce the settlement agreement. It was docketed in the above appellate cause number.

- **October 17, 2013:** Dr. Whitmer filed a traditional motion for summary judgment, supported by summary-judgment evidence, on his breach-of-contract counterclaim. He claimed that he was entitled to summary judgment because the trial court

> has already concluded that the parties' Rule 11 Agreement is a valid and enforceable settlement agreement, and the evidence conclusively establishes that despite Dr. Whitmer's continued ability, willingness, and efforts to tender the agreed-upon settlement funds in compliance with that Rule 11 Agreement, [Nancarrow] nevertheless refuses to execute a release of her claims against Dr. Whitmer and/or accept the agreed-upon funds as settlement of this lawsuit.

- **November 4, 2013:** Nancarrow filed her response to Dr. Whitmer's motion for summary judgment, arguing that the Rule 11 agreement was fraudulently induced and thus void. The response was supported by the following summary-judgment evidence: (1) Dr. Whitmer's responses to Nancarrow's requests for disclosure, (2) Dr. Bramhall's curriculum vitae, (3) Nancarrow's counsel's affidavit, (4) Nancarrow's affidavit, (5) Dr. Bramhall's affidavit, and (6) the Rule 11 agreement.

- **November 11, 2013:** Dr. Whitmer filed his reply in support of his motion for summary judgment, arguing in part that Nancarrow had failed to plead the affirmative defense of fraudulent inducement.

- **November 13, 2013:** Nancarrow filed her original answer to Dr. Whitmer's breach-of-contract counterclaim and asserted her defense that the agreement was the product of fraudulent inducement.

- **January 7, 2014:** The trial court signed a final summary judgment granting Dr. Whitmer's motion for summary judgment.

Nancarrow then filed a notice of appeal of the trial court's January 7 final summary judgment. The appeal was docketed as appellate cause number 10-14-00045-CV, but we dismissed the appeal docketed under No. 10-14-00045-CV as moot. *Nancarrow v. Whitmer*, No. 10-14-00045-CV, 2014 WL 2159552, at *1 (Tex. App.—Waco May 22, 2014, no pet.) (mem. op.). We granted leave to file an amended notice of appeal in this appeal and directed Nancarrow to file an amended brief in this appeal that included any issues that were to be raised in No. 10-14-00045-CV. *Id.* at *1-2.

Nancarrow filed an amended notice of appeal in this appeal, appealing from the January 7 final summary judgment, and then filed an amended appellant's brief. In her sole issue, Nancarrow contends that the trial court erred in entering its final summary judgment because it was based on a Rule 11 agreement regarding settlement that was fraudulently induced and thus vitiated. Dr. Whitmer filed an amended appellee's brief.

We review the trial court's ruling on a motion for summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To be entitled to summary judgment, the movant must demonstrate that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). A nonmovant wanting to assert an affirmative defense to the motion for summary judgment must urge the defense in her response and present summary-judgment evidence to create a fact issue on each element of the defense. *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Bassett v. Am. Nat'l Bank*, 145 S.W.3d 692, 696 (Tex. App.—Fort Worth 2004, no pet.). Evidence favorable to the non-movant will be taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in her favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985).

As stated, Nancarrow contends that the trial court erred in entering its final summary judgment because it was based on a Rule 11 agreement regarding settlement that was fraudulently induced and thus vitiated. The issue in this appeal is therefore whether Nancarrow provided enough summary-judgment evidence to create a fact issue on each element of the affirmative defense of fraudulent inducement. *See Am. Petrofina, Inc.*, 887 S.W.2d at 830; *Brownlee*, 665 S.W.2d at 112; *Bassett*, 145 S.W.3d at 696. A party asserting that it was fraudulently induced into entering an agreement must show that (1) the other party made a material representation, (2) the representation was false and was either known to be false when made or made without knowledge of its truth, (3) the representation was intended to be and was relied upon by the injured

party, and (4) the injury complained of was caused by the reliance. *See In re Int'l Profit Assocs., Inc.,* 274 S.W.3d 672, 678 (Tex. 2009) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997)). We will address each element in turn.

### 1. The other party made a material representation.

The representations that Nancarrow complains about are the statements regarding the substance of Dr. Bramhall's expert opinions and his anticipated testimony contained in Dr. Whitmer's responses to her requests for disclosure, as quoted above. Nancarrow argues that these statements were material because, without Dr. Bramhall's testimony, Dr. Whitmer would have been left with only his own expert testimony to defend against Nancarrow's claims of medical negligence. Nancarrow points to her counsel's affidavit to support this argument. Nancarrow's counsel stated in his affidavit that Dr. Whitmer's counsel revealed in their June 28th telephone conversation that he had tried to find another orthopedic expert besides Dr. Bramhall but had been unable to locate an expert who was willing to give testimony in support of Dr. Whitmer's treatment of Nancarrow.

Nancarrow further argues that the statements were material because they induced her (and her counsel) to settle the case and give up her right to a jury trial. *See Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 727 (Tex. App.—Waco 1998, pet. denied) ("A misrepresentation is material if it induces a party to enter a contract."). To support this argument, Nancarrow again points to her counsel's affidavit, in which he stated:

> Over the course of this lawsuit, I had learned of Dr. Bramhall. I understood him to be a very well respected and well known orthopedic surgeon in the Bryan/College Station area. He had been an outstanding

student athlete at Texas A&M University and has been the Team Physician and Orthopaedic Surgeon for the Texas A&M Department of Athletics for over 20 years. Dr. Bramhall has also served as the Director of Sports Medicine at Texas A&M University since 2001. Dr. Bramhall was also one of Mrs. Nancarrow's treating physicians as Dr. Whitmer had consulted with him and asked him to assist in an operation performed on Mrs. Nancarrow.

The designation of Dr. Bramhall was very concerning to me. As he had long time ties as Team Physician for Texas A&M University, I felt that he would be most persuasive with a jury picked from the Bryan/College Station community. While I had designated an expert highly critical of Dr. Whitmer's treatment, our expert was from the Dallas area. I was very worried that Dr. Bramhall would "carry the day" at trial due to his long held local ties.

….

In essence, the opinions that Dr. Bramhall set forth in Dr. Whitmer's Expert Disclosure would completely exonerate Dr. Whitmer of all wrongdoing. Dr. Whitmer's Expert Disclosure also revealed that Dr. Bramhall would also be used to attack the damage model we had developed for Mrs. Nancarrow.

….

Thus, I was now faced with what I viewed as an unimpeachable expert witness who would testify at trial that the Defendant had done nothing wrong nor was he the proximate cause of any of Mrs. Nancarrow's injuries.

….

[B]ased upon the Expert Disclosure by Dr[.] Whitmer of Dr. Bramhall as a testifying expert and Dr. Whitmer's disclosure of the opinions that Dr. Bramhall would be expressing at trial, I believed that Dr. Bramhall's testimony would be too damaging to her case to allow the jury to reach a verdict in Mrs. Nancarrow's favor. Based upon the Expert Disclosure by Dr[.] Whitmer, I told Mrs. Nancarrow that I felt she should settle the case for the amount offered by Dr. Whitmer's insurance carrier to avoid a loss at trial. Due to Dr. Whitmer's Expert Disclosure, Mrs. Nancarrow most reluctantly gave me her permission to settle the case and take the steps necessary to bring the case to conclusion. On July 23, at my request my

partner signed a Rule 11 Agreement on behalf of Mrs. Nancarrow agreeing to settle the case.

....

But for Dr. Whitmer's Expert Disclosure, I would have never recommended to Mrs. Nancarrow that she accept the settlement and the Rule 11 Agreement agreeing to settle the case would never have been signed. But for Dr. Whitmer's Expert Disclosure, I would have recommended to Mrs. Nancarrow that we proceed to trial for as revealed by [Dr. Whitmer's counsel], he was unable to find any other independent expert willing to defend Dr. Whitmer. Thus, without the trial testimony of Dr. Bramhall as indicated in Dr. Whitmer's Expert Disclosure, the only defense expert would have been Dr. Whitmer himself....a very strong position for Mrs. Nancarrow.

Had I known the truth that Dr. Bramhall *was not* willing to testify for Dr. Whitmer, there would have been no way that I would have recommended settling the case. Indeed, I would have strongly recommended proceeding to trial as I believe that, without the trial testimony of Dr. Bramhall in support of Dr. Whitmer, Mrs. Nancarrow would easily prevail at trial and receive a verdict far in excess of the $200,000.00 for which we ultimately agreed to settle. But for the concerns of Dr. Bramhall testifying on behalf of Dr. Whitmer and the specific exonerating opinions of Dr. Bramhall, all as set forth in Dr. Whitmer's Expert Disclosure, Mrs. Nancarrow would have had her day in court. Instead, due to the false statements contained in Dr. Whitmer's Expert Disclosure, I felt I had no choice but to recommend that Mrs. Nancarrow accept the settlement.

Similarly, Nancarrow stated in her own affidavit:

During the course of this case, [my counsel] explained that the insurance carrier for Dr. Whitmer had offered to settle my case. I asked [my counsel] his thoughts as to the likelihood of a verdict in my favor. [My counsel] explained that Dr. Whitmer was going to call J.P. Bramhall, M.D. as his expert at the time of trial. I know that Dr. Bramhall is held in very high esteem in our community. I do so as well. Dr. Bramhall is a local surgeon and in fact, is the team orthopedic surgeon for Texas A&M University. He was himself an outstanding athlete while attending Texas A&M.

[My counsel] expressed his concerns as to the persuasive effect that Dr. Bramhall's testimony would have on our local jury. [My counsel]

explained that Dr. Whitmer's Expert Disclosure had identified specific opinions to which Dr. Bramhall would testify that completely exonerated Dr. Whitmer from any negligence or wrongdoing. Further, [my counsel] explained that Dr. Whitmer's Expert Disclosure had stated specific opinions to which Dr. Bramhall would testify that refuted the damages I believe I had sustained due to Dr. Whitmer's acts and/or omissions.

Based upon the Expert Disclosure by Dr[.] Whitmer in which he stated that Dr. Bramhall would be testifying on his behalf and further, that Dr. Bramhall's opinions that he would testify to completely exonerated Dr. Whitmer, [my counsel] and I believed that Dr. Bramhall's testimony would be too damaging to my case to allow the jury to reach a verdict in my favor. Based upon the Expert Disclosure by Dr[.] Whitmer, I agreed to settle the case for the amount offered by Dr. Whitmer's insurance carrier and gave [my counsel] my authority to take the steps to settle the case.

….

But for Dr. Whitmer's Expert Disclosure, I would have never accepted the settlement and would have never given [my counsel] my authority to settle and enter in to a Rule 11 Agreement. But for Dr. Whitmer's Expert Disclosure, I would have demanded that we proceed to trial. It was only the fear of an adverse verdict created by the concerns of Dr. Bramhall testifying on behalf of Dr. Whitmer and the specific exonerating opinions of Dr. Bramhall, all as set forth in Dr. Whitmer's Expert Disclosure, that drove me to agree to settle the case.

Dr. Whitmer responds that Nancarrow's own evidence demonstrates that the alleged misrepresentations were not material. Dr. Whitmer argues that the alleged misrepresentations could not have induced Nancarrow to settle the case because his responses to Nancarrow's requests for disclosure containing the alleged misrepresentations were served two days *after* Nancarrow tendered her settlement offer.

But to be enforceable, a settlement agreement must comply with Rule 11. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). In other words, Nancarrow and Dr.

Whitmer did not enter into an enforceable settlement agreement until the agreement was either (1) in writing, signed by the parties or attorneys, and filed as part of the record[1] or (2) made orally in open court and entered as part of the record. *See* TEX. R. CIV. P. 11; *Neasbitt v. Warren*, 105 S.W.3d 113, 116 (Tex. App.—Fort Worth 2003, no pet.). The parties agree that this did not happen until they memorialized the settlement in the Rule 11 agreement on July 23, 2013, twenty days *after* Dr. Whitmer's responses to Nancarrow's requests for disclosure were served. The fact that Dr. Whitmer's responses to Nancarrow's requests for disclosure containing the alleged misrepresentations were served two days *after* Nancarrow tendered her settlement offer does not *conclusively* establish that the representations were not material. While it is some evidence that the representations were not material, the evidence in Nancarrow's and her counsel's affidavits is some evidence that the representations were material. We conclude that Nancarrow presented summary-judgment evidence to create a fact issue on the element of whether Dr. Whitmer made a material representation.

> **2. The representation was false and was either known to be false when made or made without knowledge of its truth.**

Nancarrow points to Dr. Bramhall's affidavit to support the argument that the statements regarding the substance of his opinions and his anticipated testimony are false and were either known to be false when made or made without knowledge of their truth. Dr. Bramhall's affidavit, which was signed less than one month after Dr. Whitmer's responses to Nancarrow's requests for disclosure were served, states:

---

[1] Rule 11 does not require the writing to be filed before consent is withdrawn by one of the parties; rather, it merely requires that the agreement be filed before it is sought to be enforced. *Padilla*, 907 S.W.2d at 461.

Several months ago, I was contacted by Dr. Whitmer's attorney …. In that conversation, [Dr. Whitmer's counsel] asked if I would serve as an expert witness on behalf of Dr. Whitmer. In response to [Dr. Whitmer's counsel's] inquiry, I stated that I was unwilling to serve as Dr. Whitmer's expert witness. I advised [Dr. Whitmer's counsel] that I would be unable to help with Dr. Whitmer's defense and advised him further that he should not compel my testimony via subpoena as I would likely prejudice that defense.

I have since learned that [Dr. Whitmer's counsel] has designated me as an expert witness on behalf of Dr. Whitmer. In that expert designation, certain opinions are attributed to me. In particular, I understand that the following are stated to be my opinions:

> "It is Dr. Bramhall's professional opinion that Dr. Whitmer's evaluation, care and treatment of patient Veronica Nancarrow met all applicable standards of care for a board certified orthopedic surgeon practicing in College Station, Texas, and that no action or omission of Dr. Whitmer's was a proximate cause of Plaintiff's alleged damages herein. Dr. Bramhall will testify Plaintiff suffered a severe injury to her shoulder in the fall of 10/13/2009 which, in the absence of any action or omission of Defendant, was a proximate cause of Plaintiff's ultimate injuries and/or damages herein.
>
> Dr. Bramhall will testify there were other procedures possible for Plaintiff to undergo rather than a reverse shoulder procedure, and that such procedure has left her with few future options. Dr. Bramhall will testify there is insufficient data to suggest Plaintiff will need to undergo a future revision surgery or other future surgery as a result of her injuries."

I was unaware that I would be designated as an Expert Witness for the defense in this matter and was not advised by the defense that I had been so designated. At no time did I ever express these opinions to [Dr. Whitmer's counsel] or Dr. Whitmer nor would I testify as stated in the expert designation.

Additionally, Dr. Whitmer's counsel signed the responses to Nancarrow's requests for disclosure, and Rule of Civil Procedure 191.3(b) states: "The signature of

an attorney or party on a disclosure constitutes a certification that to the best of the signer's knowledge, information, and belief, *formed after a reasonable inquiry*, the disclosure is complete and correct as of the time it is made." TEX. R. CIV. P. 191.3(b) (emphasis added). Dr. Whitmer's counsel's signature on the disclosure responses was therefore also some evidence that the responses to Nancarrow's requests for disclosure were either known to be false when made or made without knowledge of their truth.

Dr. Whitmer responds that the complained-of representations were predictions about Dr. Bramhall's anticipated future testimony and, therefore, not actionable as fraud. We disagree. First, the statement "[i]t *is* Dr. Bramhall's professional opinion that …" (emphasis added) is not a prediction about Dr. Bramhall's anticipated future testimony. It is a statement of fact of what Dr. Bramhall's current opinion is. Second, predictions about the future that are made with present knowledge that the statements are false are actionable misrepresentations. *See Bryant v. Transcontinental Gas Pipe Line Corp.*, 821 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *Tex. Indus. Trust, Inc. v. Lusk*, 312 S.W.2d 324, 326-27 (Tex. Civ. App.—San Antonio 1958, writ ref'd); *see also Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). As stated above, Dr. Bramhall averred in his affidavit,

> In response to [Dr. Whitmer's counsel's] inquiry, I stated that I was unwilling to serve as Dr. Whitmer's expert witness. I advised [Dr. Whitmer's counsel] that I would be unable to help with Dr. Whitmer's defense and advised him further that he should not compel my testimony via subpoena as I would likely prejudice that defense.

Dr. Bramhall's affidavit further indicates that he advised Dr. Whitmer's counsel of this before Dr. Whitmer served his responses containing the representations. Therefore,

even if the statements about what Dr. Bramhall would testify are predictions about his anticipated future testimony, Dr. Bramhall's affidavit raises a fact issue as to whether the statements were made with present knowledge that the statements were false.

In light of the foregoing, we conclude that Nancarrow presented summary-judgment evidence to create a fact issue on the element of whether the representations were false and were either known to be false when made or made without knowledge of their truth.

> **3.** **The representation was intended to be and was relied upon by the injured party.**

We begin our discussion of this element by addressing whether Nancarrow presented summary-judgment evidence to create a fact issue about whether Dr. Whitmer *intended* the representations to be relied upon by her. Nancarrow argues that because Dr. Whitmer's counsel had been unable to find a retained expert willing to testify on Dr. Whitmer's behalf, he included the misrepresentations in the responses to "scare Nancarrow's counsel and Nancarrow that they would face an unimpeachable defense expert who would likely be revered by the jury." Dr. Whitmer first claims that Nancarrow failed to present any evidence to support this argument. But Nancarrow does refer to her counsel's affidavit in which he stated that Dr. Whitmer's counsel revealed in their June 28th telephone conversation that he had tried to find another orthopedic expert besides Dr. Bramhall but had been unable to locate an expert who was willing to give testimony in support of Dr. Whitmer's treatment of Nancarrow.

Dr. Whitmer also argues that the evidence demonstrates that he did not serve his

disclosures with the intent to induce a settlement agreement because Nancarrow had already made the settlement offer *two days before* he served the disclosures. But, for the same reasons discussed above with regard to the materiality of the representations, the fact that Dr. Whitmer's responses were served two days after Nancarrow tendered her settlement offer does not conclusively establish that the representations were not intended to be relied upon by Nancarrow. While the fact that Dr. Whitmer's responses were served two days after Nancarrow tendered her settlement offer may be some evidence that the representations in the responses were *not* intended to be relied upon by Nancarrow, the issue here is whether Nancarrow provided summary-judgment evidence to create a fact issue about whether Dr. Whitmer *did* intend the representations in the responses to be relied upon by her.

Finally, Dr. Whitmer contends that Nancarrow could not have created a fact issue on this element because he served his expert disclosures to comply with Rules of Civil Procedure 194.2(f) and 193.6(a), the purpose of which is not to induce a settlement. *See* TEX. R. CIV. P. 193.6(a), 194.2(f). Rule 194.2(f) states that a party may request disclosure of a testifying expert's identity, the subject matter on which the expert will testify, a summary of the expert's mental impressions and opinions, and, if the expert is retained by the responding party, the data that the expert reviewed in anticipation of his testimony. TEX. R. CIV. P. 194.2(f). As stated by Dr. Whitmer in his brief, the specific purpose of this pretrial disclosure rule is "to give the opposing party sufficient information about the expert's opinions to prepare to cross-examine the expert and to prepare expert rebuttal evidence." *Bexar County Appraisal Dist. v. Abdo*, 399 S.W.3d 248,

256 (Tex. App.—San Antonio 2012, no pet.) (quoting *Miller v. Kennedy & Minshew, P.C.*, 142 S.W.3d 325, 348 (Tex. App.—Fort Worth 2003, pet. denied)). Accordingly, Rule 193.6(a) provides that a party who fails to timely provide this information once it has been requested may not offer the expert's testimony unless the trial court finds that there was good cause for the failure to timely provide the information or that the failure to provide the discovery will not unfairly surprise or prejudice the other party. TEX. R. CIV. P. 193.6(a).

The broader purpose of discovery, however, is to "seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (quoting *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992)). And by encouraging full discovery of issues and facts before trial, parties are able to assess their respective positions, thereby facilitating settlements of disputes. *Best Indus. Unif. Supply Co. v. Gulf Coast Alloy Welding, Inc.*, 41 S.W.3d 145, 157 (Tex. App.—Amarillo 2000, pet. denied) (citing *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)). Therefore, the fact that Dr. Whitmer served his expert disclosure to comply with Rules 194.2(f) and 193.6(a) does not conclusively establish that the representations were not intended to be relied upon by Nancarrow. Instead, we conclude that Nancarrow's evidence of Dr. Whitmer's counsel's statement in the June 28th telephone conversation that, besides Dr. Bramhall, he had been unable to locate an expert who was willing to give testimony in support of Dr. Whitmer's treatment of Nancarrow, followed by Nancarrow's settlement demand on July 1st, followed by the

inclusion of the statements in Dr. Whitmer's responses to Nancarrow's requests for disclosure on July 3rd, followed by Dr. Whitmer's prompt acceptance of Nancarrow's settlement demand on July 18th is sufficient circumstantial evidence to create a fact issue about whether Dr. Whitmer intended the representations in the responses to be relied upon by Nancarrow.

We next turn to whether Nancarrow presented summary-judgment evidence to create a fact issue about whether she actually relied upon the representations. Nancarrow's argument that she relied upon the representations to settle the case and to give up her right to a jury trial, along with the evidence supporting her reliance argument in both her counsel's and her own affidavits, were discussed above as part of her argument that the representations were material. We conclude that Nancarrow presented summary-judgment evidence to create a fact issue about whether she actually relied upon the representations.

Dr. Whitmer's response is that any reliance by Nancarrow was not justified. Dr. Whitmer argues that the representations occurred in arguably the most adverse context possible, that Nancarrow and her counsel had been aware of Dr. Bramhall for some time, and that if "Dr. Bramhall's opinions were destined to be such a persuasive force in a jury trial and [Nancarrow's] decision to settle," she should have therefore exercised "ordinary care for the protection of her own interests [and] certainly have spoken with Dr. Bramhall prior to making a settlement offer and/or prior to memorializing her own proposed settlement agreement." But failure to use due diligence to suspect or discover someone's fraud will not act to bar the defense of fraud to the contract. *Koral Indus. v.*

*Sec.-Conn. Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990). As stated above, Dr. Whitmer's counsel signed the responses to Nancarrow's requests for disclosure, and Rule 191.3(b) states: "The signature of an attorney or party on a disclosure constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the disclosure is complete and correct as of the time it is made." TEX. R. CIV. P. 191.3(b).

### 4.      The injury complained of was caused by the reliance.

Nancarrow contends that she was injured by her reliance because she would not have settled her case for the $200,000 policy limits had she known that the only true defense expert was to be Dr. Whitmer himself. Nancarrow argues that instead of agreeing to settle her case for $200,000 and foregoing her right to a trial, she would have proceeded to trial and, in all likelihood, obtained a verdict in her favor in excess of $200,000. Nancarrow points to her counsel's and her affidavits to support this argument. Nancarrow's counsel stated in his affidavit:

> On or about July 18, I received a telephone call from [Dr. Whitmer's counsel] who informed me that Dr. Whitmer was willing to pay the policy limits of $200,000.00 to settle the case. Mrs. Nancarrow asked my opinion as to what she should do. Due to the extensive injuries caused by Dr. Whitmer, Mrs. Nancarrow had large past and future medical expenses. In addition, due to her impairment, ongoing pain, and disfigurement, her non-economic damages caused by Dr. Whitmer were far in excess of the cap of $250,000.00 placed on such damages by Tort Reform. Mrs. Nancarrow had a verdict potential far in excess of Dr. Whitmer's policy limits of $200,000.00.
>
> However, based upon the Expert Disclosure by Dr[.] Whitmer of Dr. Bramhall as a testifying expert and Dr. Whitmer's disclosure of the opinions that Dr. Bramhall would be expressing at trial, I believed that Dr. Bramhall's testimony would be too damaging to her case to allow the jury

to reach a verdict in Mrs. Nancarrow's favor. Based upon the Expert Disclosure by Dr[.] Whitmer, I told Mrs. Nancarrow that I felt she should settle the case for the amount offered by Dr. Whitmer's insurance carrier to avoid a loss at trial. Due to Dr. Whitmer's Expert Disclosure, Mrs. Nancarrow most reluctantly gave me her permission to settle the case and take the steps necessary to bring the case to conclusion. On July 23, at my request my partner signed a Rule 11 Agreement on behalf of Mrs. Nancarrow agreeing to settle the case.

….

But for Dr. Whitmer's Expert Disclosure, I would have never recommended to Mrs. Nancarrow that she accept the settlement and the Rule 11 Agreement agreeing to settle the case would never have been signed. But for Dr. Whitmer's Expert Disclosure, I would have recommended to Mrs. Nancarrow that we proceed to trial for as revealed by [Dr. Whitmer's counsel], he was unable to find any other independent expert willing to defend Dr. Whitmer. Thus, without the trial testimony of Dr. Bramhall as indicated in Dr. Whitmer's Expert Disclosure, the only defense expert would have been Dr. Whitmer himself….a very strong position for Mrs. Nancarrow.

Had I known the truth that Dr. Bramhall *was not* willing to testify for Dr. Whitmer, there would have been no way that I would have recommended settling the case. Indeed, I would have strongly recommended proceeding to trial as I believe that, without the trial testimony of Dr. Bramhall in support of Dr. Whitmer, Mrs. Nancarrow would easily prevail at trial and receive a verdict far in excess of the $200,000.00 for which we ultimately agreed to settle. But for the concerns of Dr. Bramhall testifying on behalf of Dr. Whitmer and the specific exonerating opinions of Dr. Bramhall, all as set forth in Dr. Whitmer's Expert Disclosure, Mrs. Nancarrow would have had her day in court. Instead, due to the false statements contained in Dr. Whitmer's Expert Disclosure, I felt I had no choice but to recommend that Mrs. Nancarrow accept the settlement.

Similarly, Nancarrow stated in her own affidavit:

Based upon the Expert Disclosure by Dr[.] Whitmer in which he stated that Dr. Bramhall would be testifying on his behalf and further, that Dr. Bramhall's opinions that he would testify to completely exonerated Dr. Whitmer, [my counsel] and I believed that Dr. Bramhall's testimony would be too damaging to my case to allow the jury to reach a verdict in my favor. Based upon the Expert Disclosure by Dr[.] Whitmer, I agreed to

settle the case for the amount offered by Dr. Whitmer's insurance carrier and gave [my counsel] my authority to take the steps to settle the case.

….

But for Dr. Whitmer's Expert Disclosure, I would have never accepted the settlement and would have never given [my counsel] my authority to settle and enter in to a Rule 11 Agreement. But for Dr. Whitmer's Expert Disclosure, I would have demanded that we proceed to trial. It was only the fear of an adverse verdict created by the concerns of Dr. Bramhall testifying on behalf of Dr. Whitmer and the specific exonerating opinions of Dr. Bramhall, all as set forth in Dr. Whitmer's Expert Disclosure, that drove me to agree to settle the case.

Dr. Whitmer responds that Nancarrow failed to present any competent evidence that the alleged misrepresentations caused her injury. Dr. Whitmer claims that the assertions in Nancarrow's counsel's affidavit that Nancarrow's injuries exceeded $200,000 are conclusory. Dr. Whitmer argues in his brief:

[Nancarrow] and her counsel … did *not* present any evidence—such as paid/incurred medical bills or testimony—to support the unidentified economic and non-economic damages that [Nancarrow]'s counsel speculates [Nancarrow] could have recovered if the case had proceeded to trial. In particular, even though [Nancarrow] filed an affidavit, her affidavit did *not* contain even a single sentence addressing her alleged economic and non-economic damages.

But the agreement that Nancarrow was allegedly fraudulently induced into entering is a *settlement* agreement. And, in entering the settlement agreement, Nancarrow gave up not only her right to a jury trial but also her right to a jury trial in which she might have been awarded more than $200,000. Nancarrow states in her affidavit, "But for Dr. Whitmer's Expert Disclosure, I would have demanded that we proceed to trial." We therefore conclude that Nancarrow presented summary-judgment evidence to create a fact issue that the injury she complained of was caused by the

reliance.

In conclusion, we hold that Nancarrow presented summary-judgment evidence to create a fact issue on each element of the affirmative defense of fraudulent inducement. We sustain Nancarrow's sole issue, reverse the trial court's final summary judgment, and remand this cause to the trial court for further proceedings consistent with this opinion.


REX D. DAVIS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Reversed and remanded
Opinion delivered and filed April 30, 2015
[CV06]

